# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

FEDS FOR MEDICAL FREEDOM;
MARK ARVIDSON; JEROMY
ASHCRAFT; KATHLEEN
ASHCRAFT; JOCELYN BIGGS; PENNY
BLAIR; STACY BROWN;
CHRISTOPHER BULLEN;
CHRISTIAN BURNS; JEFFREY
CAMPBELL; PAUL CASAUS; PHILLIP
CHAVES; ZECHARIAH COOK; THOMAS
DOWNARD; KENNETH DUHAMEL;
RYAN FRANK; CHRISTOPHER GAL;
MICHAEL GONZALES; DANE
GUSTAFSON; RONALD HAGLUND;
CHRIS HAMRE; JEFFREY HARRIS;
LUKAS HARRIS; TARYN HARRIS;
BRENDA HEINZ; DANIEL HETTEMA;
JARRED HOSKINSON; AARON
JOHNSON; JONATHAN JORDON;
TASHIA AKONRAD; THERESA KRUG;
LEIGH LYNN; ZACHERY MADER;
BRIAN MADLE; RYAN MARSON;
AMBER MEADOWS; CHRISTINE
MEYER; KAREN NEWMAN; DENNIS
NOAH; TAVIS NORTH; STEVEN OLSON;
MICHAEL ORMISTON; LINDA POPP;

Case No.: 3:23-cv-05490-DWC

AMENDED COMPLAINT—
CLASS ACTION

JURY DEMAND

FIRST AMENDED COMPLAINT

1

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

1  KAREL PRUIETT; CHELSEA QUEEN;

2  KENNETH SCHLAUDRAFF, IV; MELVIN

3  SCHOW; ANTONY SCOTTI; GARRETT

4  SEICK; HOLLY SMITH; DONALD

5  SMITHHISLER; ERIC SOLIDAY, SR.;

6  ELIZABETH SOLIDAY; ERIC SOLIDAY,

7  JR.; JOSH STOWERS; DONALD

8  TIMMONS; HANS TOLF; CHRISTOPHER

9  TUBBERVILLE; BRYAN TYLER;

10  JANELLE WARD; ANTHONY ZAURI

11

12              Plaintiffs,

13        vs.

14

15  LLOYD J. AUSTIN, III

16  Secretary of Defense

17  1000 Defense Pentagon

18  Washington D.C., 203500-0001

19  (in both his individual and official capacity),

20

21  THE DEPARTMENT OF DEFENSE

22  1000 Defense Pentagon

23  Washington D.C., 203500-0001

24

25  THE UNITED STATES NAVY

26  1000 Navy Pentagon

27  Washington, D.C., 20350-1200

28

1  VICE ADMIRAL

2  GILBERT R. CISNEROS, JR.

3  Department of Defense

4  Under Secretary of Defense for Personnel and

5  Readiness

6  4000 Defense Pentagon

7  Washington D.C. 20301-4000

8  (in both his individual and official capacity),

9

10  COMMANDER CARLOS DEL TORO

11  Secretary of the Navy

12  United States Navy

13  1200 Navy Pentagon

14  Washington D.C., 20530-1200

15  (in both his individual and official capacity),

16

17  VICE ADMIRAL WILLIAM J. GALINIS

18  United States Navy

19  Commander, Naval Sea

20  Systems Command

21  1333 Isaac Hull Avenue, SE

22  Washington Navy Yard, DC 20376

23  (in both his individual and official capacity),

24

25  CAPTAIN JAMES MOSMAN

26  United States Navy

27  Commander, Puget

28  Sound Naval Shipyard & IMF

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

1400 Farragut Ave.,

Bremerton, WA 98314

(in both his individual and official capacity),

Defendants.

## AMENDED COMPLAINT—CLASS COMPLAINT

Plaintiffs Feds for Medical Freedom, *et al.,* ("Plaintiffs"), by and through their attorneys, pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), submit this Amended Class Complaint, and state the following in support of their Amended Class Complaint and Jury Demand against Lloyd J. Austin III, *et al.*, ("Defendants" or "the Department"):[1]

## **INTRODUCTION**

1)      The United States Navy, as part of its mission statement, states clearly: "[W]e defend freedom [and] preserve economic prosperity."

2)      In addition to this mission, the Navy has appointed a Deputy Inspector General for Diversity and Inclusion and Insider Threats.[2]

3)      When it comes to the treatment Plaintiffs, a class of religious believers holding unpopular religious views, Navy leadership has failed in these efforts to become more diverse and inclusive and has failed to adhere to its overall mission to defend freedom and prosperity. More importantly for these purposes, it also violated the law and the U.S. Constitution.

---

[1]  Plaintiffs intend to file claims against individual Defendants in their individual and official capacity only as permitted by law.
[2] Biography of Theresa S. Hull, Deputy Inspector General for Diversity and Inclusion and Extremism in the Military, Department of Defense Office of Inspector General, at https://www.dodig.mil/Biographies/Bio-Display/Article/2789715/theresa-s-hull/.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

4)      As described in more detail below, the Navy forced Plaintiffs to defend their beliefs simply so they could live according to their faith.

5)      But worse, because the Navy holds that religious faith in contempt, it persecuted, harassed, shamed, "outed," segregated, ostracized, and excluded them.

6)      The Navy placed some Plaintiffs on unpaid leave, put others on AWOL status, threatened all of them with termination, and forced several of them out of their jobs because of the intolerable environment that they created and fostered: one rife with animus and bigotry toward people who shared their religious beliefs, where coworkers felt empowered to opine that these religious believers ought to "fuckin' die."

7)      Despite years of dedicated public service, Defendants discriminated against Plaintiffs, many of whom have risked everything to serve their country. They did this not because Plaintiffs failed in executing their duties, and not because Defendants found they presented an actual risk to others. Defendants took such actions because Plaintiffs held sincere religious beliefs that were legitimately opposed to the COVID-19 vaccine, and those beliefs did not fit in a culture that embraced it. Indeed, Defendants valued forcing others to "embrace" the vaccine over many other cherished values such as religious liberty, mutual respect, bodily autonomy, and human dignity.

8)      Defendants violated Title VII of the Civil Rights Act, the Religious Freedom Restoration Act, and the 1st and 5th Amendments to the U.S. Constitution when they denied (or failed to respond to) Plaintiffs' requests for religious accommodations to the COVID-19 vaccine mandate and implemented other onerous obligations that violated Plaintiffs' religious beliefs.

9)      By forcing Plaintiffs to choose between a new vaccine approved for emergency use and their strong and sincerely held religious convictions, Defendants exerted coercive

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

pressure and operated within a discriminatory framework that violated applicable laws and the U.S. Constitution.

10) To "render being unvaccinated so burdensome that those who haven't received shots will have little choice other than to get them,"[3] the Department set up a separate, and more burdensome, process for religious accommodation for those with religious objections to the COVID-19 vaccine.

11) Plaintiffs, whose mission it is to defend freedom, bring this suit to remedy the harms they suffered at the hands of the Defendants, and to bring accountability to those who have failed to uphold this mission.

## JURISDICTION AND VENUE

12) Plaintiffs' claims arise out of Defendants' violation of Title VII (42 U.S.C. § 2000e, *et seq.*), RFRA (42 U.S.C. §20000bb *et seq*). and the United States Constitution.

13) This Court has jurisdiction under 5 U.S.C. §§ 701–706 (Administrative Procedures Act), and 28 U.S.C. §§ 1331 (federal question jurisdiction), 1346 (U.S. as defendant), 1361(action to compel U.S. official to perform his duty), 2201(U.S. as defendant) and the United States Constitution.

14) The Court also has jurisdiction pursuant to Title 28 U.S.C §1332 (diversity of citizenship) and 28 U.S.C. §1343(a)(4) (jurisdiction over Civil Rights claims).

15) Venue is proper under 28 U.S.C. § 1391(e)(1)(B) because the United States, one or more of its agencies, and one or more of its officers in his or her official capacity are

---

[3] Maegan Vasquez, *Biden announces measures to incentivize COVID-19 vaccinations, including a requirement for federal employees*, CNN.com, (July 29, 2021), available at: https://www.cnn.com/2021/07/29/politics/joe-biden-vaccination-requirement-announcement/index.html (last visited, May 6, 2022).

FIRST AMENDED COMPLAINT

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

Defendants; and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, at the Puget Sound Naval Shipyard.

## **PARTIES**

16)      Plaintiff Feds for Medical Freedom is a 501(c)(3) nonprofit organization with a nationwide membership of over 9,500 members. It formed to respond to legal abuses related to COVID-19 vaccine mandates and related interventions. All plaintiffs in this action are members of the organization.

17)      Plaintiff Mark Arvidson is a decorated retired officer and now Naval Architect of the Department patriotically serving his nation for more than 20 years. He received multiple excellent performance reviews and awards. His Christian religious beliefs prevented him from taking the COVID-19 vaccine because he the vaccines were created using aborted fetal cells.[4] Plaintiff requested two religious accommodations of the Department; one to exempt him from the vaccine mandate, and the other to allow him to complete his assigned mission-critical duty aboard a Department submarine. The Navy never processed either of these requests, and instead prohibited him from boarding submarines to do the mission-essential duties of his job, even though he was the most qualified in his branch. His coworkers harassed him, and his supervisors required him to take COVID-19 tests and to mask while at his desk under threat of discipline. The threats and the hostile work environment caused Arvidson to experience health problems,

---

[4] *See, e.g.*, Fred Guterl, *COVID-19 Vaccines and Fetal Tissue: The Science and Controversy Explained*, NEWSWEEK, March 21, 2021, at https://www.newsweek.com/covid-19-vaccines-fetal-tissue-science-controversy-explained-1575863. ("Fetal-cell lines played a vital role in the development of all three vaccines. Moderna and Pfizer used Van der Eb's original cell line, called HEK 293, in the testing of their coronavirus vaccines—that is, scientists first developed the vaccines using their mRNA technologies and subsequently tested them on lab-cultured HEK 293 cells, ancestors of the original cells that Van der Eb took from an embryo almost 50 years ago. Johnson & Johnson used a different fetal-cell line, called PER.C6, that was cultured in Van der Eb's lab in 1995. While Moderna and Pfizer used fetal cells for testing their vaccine after it was already produced, J&J used fetal cells as tiny "factories" that produced the active ingredient in its vaccine.")

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

irritability, and emotional and marital stress. Arvidson eventually took leave without pay from his job, thus losing further opportunities for workplace promotion. See Ex. A

18) Plaintiff Jeromy C. Ashcraft worked as a Funds Manager, GS-12, at PSNS for over 14 years. He received multiple excellent performance reviews; his office even named him Employee of the Year in 2021. The COVID-19 vaccine mandate violates Mr. Ashcraft's religious beliefs because he believes in a God-given right to matters of conscience and bodily autonomy. He filed a religious accommodation request but did not receive clear direction on how to submit it or the process involved. Mr. Ashcraft became physically and emotionally ill because of continued pressure, threat of termination, and harassment. The environment became so hostile that Mr. Ashcraft began taking anti-depressants. The coercion and threat of disciplinary action or termination led Ashcraft to eventually end his employment and take a job in another state, incurring a serious financial burden as he sold his house and lost retirement savings. The move also separated him from his family.

19) Plaintiff Kathleen D. Ashcraft worked as an Engineering Tech, GS-11, at PSNS for 23 years. She is married to Plaintiff Jeromy Ashcraft. Mrs. Ashcraft received multiple excellent performance reviews and awards and never received a negative performance review. Her religious beliefs prevented her from taking the vaccine. She filed a religious accommodation request and never received any action on it, or any response. The Navy's messaging pressuring employees to get vaccinated or suffer discipline or discharge threatened and intimidated her. She suffered a hostile work environment when co-workers and leaders continually ridiculed and belittled employees with religious beliefs that prevented them from taking the vaccine, judging her decisions in public for others to hear. Mrs. Ashcraft suffered constructive discharge when the intolerable working conditions forced her to retire early. She and her husband had to sell their

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

house, and she suffered extreme family stress because she had to move away from her elderly mother because of family job changes and housing relocation.

20)     Plaintiff Jocelyn Biggs has worked for the PSNA for nine years.  She has very strong religious beliefs that "God created [her] in his divine image," . . . and that "he would not want her to have manmade synthetics in her."  Ms. Biggs says, "[t]o accept this injection would be to accept that my faith has faltered. I cannot and will not falter from what I know to be right and true to God. My convictions are strong, I will not waiver from God's image of myself. I know that acceptance of this man-made synthetic vaccination would deliver my soul to the devil."  She felt constant coercion to get the vaccine but when she asked for guidance on how to decline the vaccine, was constantly told that "they were still awaiting guidance."  Ms. Bigg's states that,

> [S]ince September 9, I have been depressed because I do not know whether I will be able to keep my job. I cannot fall asleep at night because I am unable to stop worrying about the implications made by the President, and by my command. My relationship with my husband has been strained as my libido is now at an all time low. I feel anxiety during every minute of the day because I am labeled an "anti-vaxer". I am a normal person but my employer treats me like a leper. The president of the United States, and the command that I work for have perpetuated the sentiment that I am "lesser". [T]hey have put me on the outside and it has physically, mentally, and emotionally affected me in the worst of ways.

21)     Plaintiff Penny Blair worked at PSNS for 22 years where she is currently employed as a Continuous Training and Development Training Manager. She received multiple awards for excellent work performance. Her religious beliefs caused her to decline vaccination against COVID-19. Blair submitted a religious exemption request on or around November 5, 2021, yet the Navy never responded to her exemption request. Blair experienced constant anxiety over job security, in light of the recurring email memos from PSNS leadership. These emails continually emphasized the need to vaccinate for continued employment, while failing to offer

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

clear direction for those requiring a religious exemption. Blair was forced to admit her unvaccinated status to workplace management in order to inquire about her job security. Because of her religious beliefs against the vaccine, the Navy required Blair to undergo regular testing for COVID-19 on the worksite. Since leadership administered these COVID-19 tests in sight of everyone at the workplace, her objection to the vaccine became public knowledge. The work environment was hostile to and judgmental of all employees whose beliefs prohibited them from taking the vaccine. The masking mandate for those who could not take the vaccine, including religious believers, also broadcasted her religious beliefs, and she found the masking particularly distressing because of a suffocation incident that she experienced as a child. As a result of her religious beliefs, the Navy canceled Blair's participation in two work-related conferences at the last minute. She experienced sleep deprivation, stress-induced nausea, unusual outbursts of sadness and frustration, and extended leaves of absence from work. Blair felt trapped into her continued employment with PSNS because she determined that she was not financially prepared to leave her job.

22)     Plaintiff Tracy Brown is a Supervisory Financial Management Analyst and has worked for the PSNS for over 22 years.  She started in 2002 as a Shop Apprentice and has earned numerous awards, including for outstanding performance in 2022.  On November 8, 2021, Ms. Brown filed for a religious exemption to the vaccine mandate and asked for complete confidentiality for fear of reprisal.  That privacy was violated when the vaccine attestation "validator" emailed her about attesting to her vaccine status, intending to include the alternate "validator." Instead, he emailed the wrong person who had no right to know about her vaccine status.  Her request for an accommodation has never been adjudicated.  Because she was unable to take the vaccine, she was required to test for COVID-19 twice weekly at home on her own

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

time. She did this "against her consent and under duress," taking seriously the Navy's threat of discipline and possible termination for failure to test. The heavy-handed communications from senior leadership about the important of being vaccinated created a hostile work environment where she was afraid to share he vaccine status. Ms. Brown states thata Bill Galinis wrote in an email to all employees that,

> Frankly, if you are not vaccinated, you will not work for the U.S. Navy, thus coercing me to abandon my sincere religious beliefs and get a jab. This was one of the most damaging statements from leadership and no explanation of intended meaning can change the fact of what was said and the negative impact it had on my spiritual, mental and physical health.

She later received a threat by Mosman threatening disciplinary action and possible removal from service for employees who protested COVID. Ms. Brown states, "Capt Mosman's words caused me to cower and lose my voice." She states,

> I was once hailed a hero. Now I was considered a threat. Workplace conversations against the unvaccinated escalated. Working onsite became uncomfortable. I didn't know how long I could hide my vaccination status. I found myself cowering in my office and becoming increasingly withdrawn and afraid. Every mention of November 22, [the date required to be vaccinated] was a gut punch. As a supervisor and due to the vaccination reporting protocol, I knew that I was the only unvaccinated employee in my office. I felt isolated and unprotected by the Command. By Update #3, I was an emotional wreck. I was fearful of losing my job. I began to experience a degradation in health from lack of sleep, desire to exercise and subsequent weight gain. Due to stress, my blood pressure was on the rise, had relentless migraines, nausea and body aches.

23) Plaintiff Christopher Bullen worked at PSNS for 12 years before he left his position as a GS-12. He is a disabled veteran who received multiple excellent performance reviews and awards, including Employee of the Month. Mr. Bullen's religious beliefs caused him to decline the COVID-19 vaccine; he submitted three religious exemption requests to be exempt from vaccination and testing, but the Navy never adjudicated these requests. Non-religious employees in his group laughed and mocked him because of his religious beliefs. The

FIRST AMENDED COMPLAINT

11

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

information about his exemptions and vaccination status should never have been public but the Command's processes did nothing to conceal Plaintiffs' identities. The work environment became hostile as leaders and co-workers pressured employees to just go along with the mandate. Mr. Bullen was counseled three times at work for getting upset because of the work environment. He suffered mood swings at home, fighting with his family, and crying himself to sleep because of the betrayal he felt from his employer. He was forced to retire early and sell his home in May 2022 because the discrimination (e.g., threat of termination) and harassment became unbearable. He is currently unemployed but felt compelled to leave PSNS to protect his body and his family.

24) Plaintiff Christian Burns worked as a Mechanical Supervisor at PSNS, where was employed for 12 years before his forced resignation. His religious beliefs prevented him from receiving COVID-19 vaccination. Burns submitted a religious exemption request for the vaccine mandate and the testing mandate, but his supervisors and managers appeared to be confused and unaware of his exemption request after he had submitted it. Burns received threats that he would be sent home indefinitely on AWOL for not signing a vaccine attestation form, even though Burns had already submitted a religious exemption request to the vaccine. Burns had to pick up COVID-19 tests at the worksite because he did not certify that he was vaccinated and had to carry his testing kits out throughout the workplace in a brown bag, which signaled his vaccination status to other people at the worksite. Burns began to suspect that his employer was trying to create a pretext for future termination. His fellow employees made hateful comments in his presence about people who would not take the vaccine without any response from leadership, with one person saying, "anyone who doesn't have the shot by now should all fuckin' die." Because of mandate-related stress and fear of losing his income, Burns experienced insomnia,

FIRST AMENDED COMPLAINT

12

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

weight-loss, loss of sex drive, and tension in his relationship with his wife. Burns had to see a doctor and was prescribed medication for his stress and depression. He took sick leave per the doctor's recommendation and had to sell valued possessions to ensure financial security.

25) Plaintiff Jeffrey A. Campbell is a Shipwright Supervisor at PSNS, where he worked for 23 years. He received multiple excellent performance reviews and awards. His religious beliefs caused him to decline the COVID-19 vaccine. He submitted a religious exemption request, which he was required to revise three times, and never received a response. Mr. Campbell felt bullied for his religious beliefs, both in the form of written communications (e.g., threatening termination) from his leadership as well as interactions with coworkers who did not share his beliefs. He has experienced stress, anxiety, and depression. Mr. Campbell saw several of his coworkers resign because of the untenable work environment. His friends advised him to stop reading the weekly updates from management about the vaccine. Those communications pressured, bullied, and harassed employees into denying their religious beliefs and taking the vaccine. Mr. Campbell also struggled with the mask mandate, which became a requirement because of his religious beliefs. Adhering to and enforcing the masking requirement "went against his conscience." Mr. Campbell was told that he would be "written up" if he did not wear a mask. Because the adverse mental harms of the masking mandate, Campbell withdrew from social engagements, including a Bible study. Because the Department told him to avoid large groups of people outside of work and to test himself for COVID-19 outside of working hours, he experienced negative impacts on his social, spiritual, and private life. Campbell eventually rented his home and moved in with a family member to ensure his financial security in the case that he was fired, and he endured constant stress at the threat of loss of job security.

26) Plaintiff Paul Casaus worked for PSNS for the past 38 years as a Code 900T

FIRST AMENDED COMPLAINT

13

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

employee. He has received multiple awards for his excellent work performance. Mr. Casaus's religious beliefs prevent him from receiving COVID-19 vaccination. He reports that between late October and early November of 2021, he received an email indicating that all PSNS employees were required to get vaccinated, and that failure to vaccinate would result in disciplinary action. Casaus dreaded receiving emails from leadership given their continual messaging that vaccination was required for continued employment. Casaus also experienced constant pressure from his fellow employees to reveal his private medical status regarding vaccination, given their questions about what kind of vaccine he had received. He also experienced a hostile environment at the job site towards unvaccinated persons, who were called "non-vaxxers" and discussed negatively by other employees. As a result of the constant work-related stress and uncertainty regarding his job security, Casaus reports that his marriage and family life were negatively impacted, and that he lost weight because of his state of continual stress. Ultimately, Casaus found the workplace intolerable and decided to retire two years early to protect his religious beliefs.

27) Plaintiff Phillip Chavez started working at PSNS in 2010 as a Mechanical Engineer in the Submarine Main Propulsion Group, eventually becoming the Engineering Lead for the Noise and Vibration Group. Mr. Chavez has been a model employee, receiving numerous awards and "outstanding" reviews, including 11 awards during COVID-19. Mr. Chavez has sincerely held religious beliefs which caused him to decline the COVID-19 vaccination mandate. He requested a religious accommodation on November 4, 2021. He received a response that acknowledged his request, but never received a substantive response. He was left without answers about his future and his job security, causing him extreme physical and mental anxiety and stress. Mr. Chavez was restricted on travel on at least three occasions and was forced to

FIRST AMENDED COMPLAINT

14

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

submit to bodily testing twice each week. He was forced to take a "walk of shame" to get his "brown bag" of tests from the office. He suffered debilitating headaches and significant loss of sleep, worry, shame from harassment. His department head told him he and other employees with similar religious beliefs that they were losing development opportunities and experience which would have career impacts down the road. Mr. Chavez resigned his position to avoid "feeling like a leper, an outcast, and not equal to other employees."

28)     Plaintiff Zechariah T. Cook has worked at PSNS for the past 15 years and is currently Lead Nuclear Engineer. He has received multiple excellent performance reviews and awards. His religious beliefs prevent him from taking the COVID-19 vaccine. He reports that his employer gave ambiguous information on whether religious exemption requests would be processed before disciplinary action for refusal to vaccinate initiated. Mr. Cook was forced to wear a mask when others who did not share his religious beliefs were not required to do so, which was a visual indication of his religious beliefs. This was particularly stressful because many of his coworkers expressed extreme prejudice and ridicule towards those who refused to be vaccinated. He experienced fear and uncertainty about whether he would be terminated because of statements leadership made about the vaccine requirement. As the result of how leadership treated him, Mr. Cook experienced depression and headaches and had to see a psychologist. He experienced stress at the threat of loss of his job, particularly after his supervisor told him someone else might need to fill his role. This led to extreme stress in his family and personal life.

29)     Plaintiff Thomas E. Downard has worked as a code quality analyst for PSNS and worked in the Navy for over 17 years. He has been awarded over 40 different special act, service, or performance awards since his career began. Mr. Downard believes his body is God's temple and that the vaccine did not accord with this view. Because of the intimidation, coercion, and

threats to job security in the Commander's correspondence, Mr. Downard became depressed and physically ill. He had to take leave because of the pressure the Command was putting on him to violate his beliefs. "I was going to have to choose between supporting my family and my faith, and my career." The "hostility of the command" continued when the captain's remarks on employees and vaccination "did not make me feel like I was free to have an opinion and that I could lose my job. A supervisor …. Stated that unvaccinated people will be fine because they can get a job in fast food or as a custodian if they leave." Mr. Downard suffered harassment by coworkers and leaders, who deemed him and others who shared his religious beliefs as not "intelligent," suggesting they "should just get [the vaccine] or leave." These and many other comments made Mr. Downard feel singled-out, unwelcome, and excluded from his team.

30)     Plaintiff Kenneth R. DuHamel has been a Nuclear Marine Pipefitter at PSNS since 2013. He has received several awards recognizing him for the quality of his workmanship and his professionalism. Mr. DuHamel submitted a "very personal" religious accommodation request to be exempt from the vaccine in November 2021 but never received a resolution. In fact, in February 2023, nearly 500 days after submitting his request, Human Resources asked whether he had ever submitted an accommodation. Mr. DuHamel was denied travel opportunities because of his religious beliefs which has impacted his career options and his pay. He has endured harassment, threats, intimidation, scare tactics, coercion, hostile work environment, humiliation, segregation, privacy breaches, and countless other forms of discriminatory conduct as a direct result of his religious beliefs.

31)     Plaintiff Ryan Frank worked for PSNS for over 21 years as a pipefitter, and later as an engineering technician and mechanical engineer. He has superior performance ratings and countless awards. Mr. Frank has religious beliefs which prevent him from taking the COVID-19

FIRST AMENDED COMPLAINT

16

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

vaccine, for which he submitted a request for religious accommodation. Mr. Frank has endured harassment, threat of termination and discipline, intimidation, scare tactics, coercion, hostile work environment, humiliation, segregation, privacy breaches, and other forms of discriminatory conduct as a direct result of his religious beliefs. Mr. Frank considered himself a "lifer" because he "found purpose and believed in supporting the Navy to defend our country's freedoms. . ." However, the stress, anxiety, fear, and mental anguish was so great, he eventually resigned, suffering family stress and financial hardship as a result.

32)     Plaintiff Christopher A. Gal has worked for PSNS as an Insulator Mechanic and now a Nuclear Zone Manager for almost 29 years. He has received countless awards and positive performance reviews. Mr. Gal's religious beliefs prohibited him from taking the COVID-19 vaccine. Mr. Gal also has medical disabilities, as he went into anaphylactic shock from contrast dye used for a CAT scan, and he was deeply concerned about the vaccine. He suffered physical impairments from the stress and hostile work environment, including insomnia, vertigo, digestive upsets, heart palpitations, high blood pressure, and anxiety. He wrote up a request for religious accommodation but did not submit it because there was "no information or guidance as to what an acceptable format was." He overheard his supervisor plotting to remove him from his position as a direct result of his religious beliefs, stating, "If we could get Chris to retire, you could take his spot." On November 8, 2021, the deadline for getting the vaccine, he felt so much pressure and duress, that he went against his own religious beliefs and took the vaccine just to keep his job. He was devastated to learn after succumbing to the pressure that he could still "get covid, carry covid, and transmit covid."

33)     Defendant Michael Gonzales has worked at the Puget Sound Naval Shipyard since 2005 and has an exemplary disciplinary record. The father of five children, he objected to

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

taking the vaccine because of his sincerely held religious beliefs. He filed a religious exemption request and received no response. He was coerced and pressured to get the vaccine despite his religious beliefs, was threatened with job loss, and was subject to a hostile work environment. Like many others, he received an email from his leadership after filing for a religious exemption (which was treated with skepticism as not being "legitimate") and which admitted that he would be treated differently (and adversely) with weekly testing. Defendant was under severe mental anguish because of this hostile work environment and discriminatory treatment, as well as for the lack of a clearly defined procedure for the adjudication of religious exemptions and was in a state of fear, uncertainty, and mental distress, which resulted in his decision to take an unprecedented amount of personal leave. Ultimately, Mr. Gonzales resigned because of the untenable working conditions, causing him to lose additional retirement benefits that he would have otherwise received.

34) Dane Gustafson is a 15-year employee who is a senior Mechanical Engineer. His religious beliefs prevent him from receiving the COVID-19 vaccine and from undergoing COVID-19 testing. Mr. Gustafson submitted three religious exemption requests, one seeking an exemption from the vaccine (filed Nov. 2, 2021), one seeking exemption from COVID-19 testing (filed Dec. 16, 2021) and a third (unrelated to the vaccine) seeking to be exempt from working on the Sabbath (filed April 28, 2021). While Mr. Gustafson received notification that these requests had been received, the Navy never responded substantively to his requests related to the vaccine and testing. Yet he was scheduled for an "interactive dialogue" within five days of filing his Sabbath exemption and his request was granted less than two weeks later. It is unclear why Mr. Gustafson's other accommodation requests could not have gone through the same process. Because his beliefs prohibited him from taking the vaccine, PSNS leadership forced Mr.

FIRST AMENDED COMPLAINT

18

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

Gustafson to test regularly, or face being placed in an absent without leave (AWOL) status. However, his religious beliefs also prevented him from testing, so he lived under the threat of being designated as AWOL and potentially terminated. He was also denied the ability to travel to San Diego, Norfolk, and Japan, which resulted in loss of educational and development opportunities.

35) Ronald Haglund is a Shipwright Supervisor PSNS, where he has worked for 21 years. He has received excellent performance reviews and awards. His Christian religious beliefs, which are "central to my life and [his] faith," prohibit him from taking both the COVID-19 vaccine and the COVID-19 testing. Accordingly, he submitted a religious exemption request to be exempt from the vaccine. Mr. Haglund unwillingly underwent COVID-19 testing because it was the only way he felt could continue working on Naval submarines. He also reported to his leadership that the mask mandate resulted in an unsafe work environment because constant masking during strenuous outdoor labor (building and dismantling scaffolding) caused significant adverse physical effects, including heart abnormalities and low levels of oxygen experienced by men under his charge. The stress of not knowing whether his accommodation would be granted, and whether he would be able to continue his job took an extreme toll on Mr. Haglund and his family. Mr. Haglund was devastated as his entire team, under extreme duress, succumbed to the pressure and took the vaccine against their own beliefs – in order to keep their jobs.

36) Chris Hamre worked as an Equipment Specialist GS-12 at PSNS for 11 years. He had received multiple excellent performance awards and had never received any disciplinary actions. Mr. Hamre's religious beliefs prohibited him from taking the COVID-19 vaccine. After receiving multiple official communications threatening job loss for failure to get the vaccine, Mr.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

Hamre understood that he would be forced to take the vaccine or be fired from his job. Based on the tone and coercion of the communications, he believed that his employer would not respect his religious beliefs prohibiting him from taking the vaccine. Mr. Hamre offered to take leave without pay until the pandemic was over, or to work remotely in order to keep his job. The Navy denied both options, leaving him no choice but to end his employment with the Navy to retain his integrity to his religious beliefs. Consequently, he now makes less money to support his family and he forfeited benefits he would have received from continued employment at PSNS.

37)     Plaintiff Jeffrey Harris was a Refueling Project Engineer at PSNS, where he had worked for the past 37 years. He received over a dozen awards for his excellent work performance. Because of his religious beliefs, Harris declined the vaccination against COVID-19. Harris received multiple coercive emails regarding COVID-19 vaccination. Because of emails like these, Harris experienced a stressful work environment that did not appear willing to accommodate his religious beliefs, and he also experienced constant fear of losing his job. Mandatory testing on the worksite and mandatory masking for unvaccinated employees contributed to exposing Harris's religious beliefs to his fellow employees, and Harris perceived these requirements as discrimination against those who were religiously opposed to the vaccine. As the result of constant stress and lack of job security, Harris experienced nausea, irritability, sleep deprivation, depression, and others. He lost many hours of quality time with his family. Ultimately Harris resigned from his job at PSNS, although he would have been happy to continue his employment if he had not experienced such significant workplace stress related to the Navy's religious coercion.

38)     Lukas Harris worked as a Welder Helper at PSNS for three years. He received multiple awards and honors for his performance. Mr. Harris' religious beliefs prohibited him

FIRST AMENDED COMPLAINT

20

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

from taking the COVID-19 vaccination, so he filed a request for religious accommodation exempting him from the vaccine requirement. From the onset of the vaccine mandate, Mr. Harris was extremely concerned for his welfare. He contacted four different supervisors to let them know he could not in good conscience take the vaccine and they each told him he "had to have the shot or [he] would be fired." Under duress, Mr. Harris unwillingly agreed to undergo weekly testing for fear of losing his job. He was publicly exposed as he picked up the test each week from the office. Mr. Harris suffers "a nightmarish rollercoaster of anxiety to this day." He experienced feelings of helplessness, depression, headaches, difficulty sleeping, vomiting, stomach upset and weight loss that continue. He has suffered threats of termination, workplace discipline, emotional duress, anxiety, and a hostile work environment as a direct result of his religious beliefs. These actions by Defendants made his workplace untenable. Because of the "very real" fear of job loss, the "daily stress and concern about ongoing negative treatment . . . due to [his] sincerely held religious beliefs," Mr. Harris resigned on March 14, 2023, which prematurely ended his career with the Navy.

39) Plaintiff Taryn E. Harris has been an Apprentice Fabric Worker at PSNS for over 3 years. Her evaluations show a "great reputation for [her] work" and she has received multiple awards. She has sincerely held religious beliefs which prevent her from accepting the COVID-19 vaccine because she "believes that life begins at conception and … [a]bortion is murder." Ms. Harris wanted to submit a religious exemption but "was very discouraged by the lack of information . . . on this employment-crucial requirement." All the emails sent from supervisors "tormented me, and I felt that my religious decision was being undermined." Ms. Harris has endured various forms of discrimination, harassment, intimidation, coercion, segregation, professional and interpersonal humiliation, privacy breaches and countless instances of

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

discriminatory behavior as a direct result of her sincerely held religious beliefs.

40)     Plaintiff Brenda Heinz is a Planner at PSNS and has worked for the Command for the last 18 years. She has a solid performance record, including Safety Employee of the Year. Ms. Heinz's religious beliefs preclude her from submitting to the COVID-19 vaccine mandate, so she submitted a request for religious exemption on October 14, 2021. Like all other Plaintiffs, she never received a determination. After reading an email from Commander Galinis on October 14, 2021, stating, "Frankly, if you are not vaccinated, you will not work for the U.S. Navy. To this end, I am asking you to get vaccinated in support of NAVSEAs mission," Ms. Heinz felt sick to her stomach. She suffered sleep loss and anxiety and was so stressed she had to take leave from work. Ms. Heinz lived under constant fear that she would have to start over in a new job "at [her] age, with another 12 years to go before [she could] retire."

41)     Plaintiff Daniel Hettema is a Nuclear Inspector at PSNS, where he has worked for 11 years. Mr. Hettema has religious beliefs that prevent him from receiving the COVID-19 vaccination. While Hettema submitted a religious exemption request to his employer, he reports that the Navy provided no clarity on the process, and he did not know how the process would work. Mr. Hettema began to believe that the Navy would not respect his religious beliefs. As the result of his religious beliefs against the vaccine, Mr. Hettema was required to undergo testing at his workplace, and the testing kits administered at the workplace were conspicuous to other employees, making him a target for judgement and harassment. As a result of the stressful work environment and the Department-wide coercion to take the vaccine against his religious beliefs, Hettema became physically ill and had to take leave from work.

42)     Plaintiff Jarred Hoskinson was a Marine Machinery Mechanic at PSNS where he worked for 10 years. Mr. Hoskinson also worked in the Union Office, helping to resolve

FIRST AMENDED COMPLAINT

22

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

problems for employees and working to ensure workplace fairness and equality. On November 5, 2021, he submitted a request for religious accommodation to the COVID-19 vaccination. He could not consent to the vaccine because of his religious beliefs. On December 10, 2021, Mr. Hoskinson was "outed" in an email that included names of employees who objected to the vaccine with instructions about upcoming testing requirements for those whose religious beliefs prohibited taking the vaccine. Mr. Hoskinson details his experiences as "stressful, shocking, hopeless, [and] depressing." Mr. Hoskinson resigned from PSNS because of the constant harassment and threats to his employment over his religious beliefs. He was forced to give up his career and pursue a different line of work to make ends meet.

43) Plaintiff Aaron C. Johnson is a mechanical engineer at PSNS for over 11 years. He is one of the most experienced and knowledgeable not only in his branch, but in his division. Mr. Johnson has sincerely held religious beliefs that caused him to decline the COVID-19 vaccination. To do so would violate his Christian conscience and "to fail to obey that conscience is sinful." PSNS's policy to mandate COVID-19 vaccinations has created "anxiety and stress from a constant fear of losing my job, loss to my livelihood and the inability to practice my faith while being employed at PSNS." Mr. Johnson has been limited in his ability to perform the essential functions of his job and to grow his career because of the discriminatory policies of PSNS. Mr. Johnson submitted a request for religious accommodation, but the emails from Capt. Mosman made it clear "there was no plan to address an accommodation for my religious beliefs." Mr. Johnson has experienced work and travel restrictions, loss of career development opportunities, invasive bodily testing policies, privacy breaches, humiliation, harassment, coercion, and countless other discriminatory practices. Mr. Johnson suffered adverse employment actions as he was denied travel to Japan for a critical mission for which he was

FIRST AMENDED COMPLAINT

23

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

scheduled. It was "extremely embarrassing and intimidating" to discuss the reasons for not going (religious beliefs and not vaccinating) with his supervisor. The "command does not deny people employment opportunity in Japan," but he was denied. He was also denied travel multiple times in January 2022 for separate opportunities, which has amounted to tens of thousands of dollars of lost income.

44) Plaintiff Jonathan D. Jordan has worked for PSNS for 22 years in the Ocean Engineering Department. Mr. Jordan has sincerely held religious beliefs which cause him to decline the COVID-19 vaccination. "If anyone regards something as unclean, then for him it is unclean. For God's temple is holy, and you are that temple." While speaking with a division head, Bryan McFall, about the vaccine mandate with a group of others, McFall stated, "The unvaccinated should be fired and they should be fired right now." After this statement, Mr. Jordan believed that his chances of remaining employed and remaining true to his faith were very low, so he made the decision to sell his beloved house which he and his wife had worked hard to make a home in anticipation of losing his job. He and his family were forced to live with his parents for over six months and are currently renting. Mr. Jordan has endured various forms of harassment, lack of accommodation, professional and interpersonal humiliation, privacy breaches, ostracism, threats of adverse action and other countless instances of discriminatory behavior as a direct result of his sincerely held religious beliefs.

45) Plaintiff Tashia Konrad is a Human Resource Specialist at NAVFAC HRO, Bangor. Ms. Konrad has been with the Navy for 7 years and has received several performance awards for excellence. Ms. Konrad has sincerely held religious beliefs which cause her to decline the COVID-19 vaccine. "I was created by God, perfectly designed to fulfill His purposes." "My body is a temple of the Holy Spirit." "Abortion is morally wrong." "I am to use wisdom and trust

FIRST AMENDED COMPLAINT

24

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

God, not man." Ms. Konrad has experienced discrimination in the workplace, harassment, coercion, invasive bodily testing, hostile work environment, ostracism, threats of adverse action, and countless other forms of discrimination because of her religious beliefs. She heard other employees calling her "stupid" and "selfish." She has experienced great anxiety and stress and has had to take sick and annual leave because of the hostile work environment.

46) Plaintiff Theresa Krug has worked for PSNS for over 5 years. She has received multiple monetary, time off, and participation awards. Ms. Krug has sincerely held religious beliefs which conflict with all COVID-19 products. She submitted a request for religious accommodation that was never processed. Ms. Krug has developed extreme mental anguish from the intimidating, harassing, coercing and discriminatory behavior of PSNS to force and pressure others to get the COVID-19 vaccination. Ms. Krug felt "segregated at work based on [her] vaccine status." It was "us against them" mentality that affected her morale, "pitted workers against each other … and gave the vaccinated a sense of superiority." She was treated differently from other vaccinated individuals by weekly testing and threatened adverse actions by Captain Mosman if she did not comply. Ms. Krug has not received a response to her accommodation request even though Captain Mosman stated in an email, "The only way someone can stay employed at PSNS is to be vaccinated or be exempt on a legitimate medical or religious basis." Ms. Krug has endured various forms of harassment, failure to accommodate, and discrimination against her religious beliefs, professional and interpersonal humiliation, privacy breaches, ostracism, threats of adverse action and other instances of discriminatory behavior as a direct result of her sincerely held religious beliefs.

47) Plaintiff Leigh K. Lynn has worked for PSNS for 25 years as a Marine Electrician and has extensive certifications and education. Her performance appraisals have always been

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

positive, and she has received numerous awards. Ms. Lynn has religious beliefs which prevent her from taking a COVID-19 vaccine. Ms. Lynn has endured various forms of discrimination, harassment, intimidation, coercion, segregation and professional and interpersonal humiliation and as a direct result of her sincerely held religious beliefs. Mr. Lynn submitted a request for religious accommodation on November 7, 2021, which was never processed. She developed facial twitches that are still ongoing which she attributes to the stress related to the PSNS's policies and harassment over the COVID-19 mandates. She lost out on professional and financial opportunities, including bonuses, for work because her travel was restricted because of not being vaccinated.

48)     Plaintiff Zachary Mader is a Senior Nuclear Engineer and has worked for the PSNS for the past 18 years. He has received multiple excellent performance reviews and awards. Mr. Mader's religious beliefs prevent him from taking the COVID-19 vaccines and he filed a religious exemption request on November 3, 2021. His request was never adjudicated. Because of his religious objection to the vaccine, he was forced to test twice a week, which resulted in him being "outed" because he was required to pick up tests publicly. Mr. Mader was not permitted to travel and therefore lost out on several training and development activities, which also interfered with his ability to support mission readiness. He and his wife both suffered physical and mental repercussions of the stress and anxiety they endured. His wife had to undergo dozens of neuro treatment sessions for the anxiety and sleep deprivation she experienced. Mr. Mader's Crohn's Disease, which had been under control for nearly ten years, became exacerbated because of the stress of potential job loss, causing increased gastrointestinal inflammation and digestive health issues. He has been unable to advance in his position with work enrichment activities and travel, as they were now unavailable to him as a direct result of

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

his religious beliefs.

49)     Plaintiff Brian T. Madle is a Second-level Combined Trades Supervisor at PSNS. He has worked for PSNS for over 34 years, since he was 19 years old. He has no less than 15 performance awards throughout his career and has been promoted into leadership roles. He has religious beliefs which cause him to decline the COVID-19 vaccine. "My body is my temple and the sacred blood within are my responsibility to protect, in the eyes of God." The constant threats of discipline and removal from service made Mr. Madle "sick to his stomach." He filed a religious accommodation request but felt betrayed by the government when he learned that there was no timeframe for adjudicating accommodation requests and no sense of who would be adjudicating them. He was in shock that his employer was treating him this way. He felt abandoned and sunk into feelings of "hopelessness and despair" because he was trapped in his position. He researched early retirement but could not afford it. He gained weight, suffered insomnia, and his anxiety increased to the highest level of his life. He was subject to a hostile work environment that was pervaded by division, segregation, insults and ridicule, contempt and loss of dignity.

50)     Plaintiff Amber Meadows is a Tools and Parts Assistant at PSNS, where she has worked for the past eight years. During her employment, Meadows has received multiple awards and promotions for excellent work performance. Meadows' religious beliefs prevented her from receiving COVID-19 vaccination. She submitted a religious exemption to the vaccination to her employer; however, Meadows was denied a promotion that she was expecting to receive prior to the deadline for submitting religious exemption requests.  Because she previously had been told that she would receive this promotion to "permanent work lead," and because two other people received the permanent work lead promotion several months later in lieu of her, Meadows

FIRST AMENDED COMPLAINT

27

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

reasonably suspected that she failed to receive job promotion because her employer disfavored her religious vaccine exemption, not because the employer had no open positions or because of work performance issues. Furthermore, Meadows was not allowed to attend four different work trips to San Diego. Meadows also experienced coercive and insensitive comments from fellow employees who did not agree with her religious objections to the vaccine. Because of the stressful work environment and fear of losing her job, Meadows had to take significant leave from work. She experienced hair loss, stress-induced nausea, weight fluctuation, and anxiety over the potential need to sell her childhood home of 40 years because of a loss of income.

51)     Plaintiff Christine A. Meyer was forced to resign and retire early after 28 years of providing "faithful and reputable service" for the PSNS. She was honored to have been the only New Employee Orientation Program Manager. Ms. Meyer always earned high performance ratings, as well as numerous awards and citations. Ms. Meyer holds sincere religious beliefs which cause her to decline the COVID-19 vaccination. Like other Plaintiffs, she was threatened with discipline and possible termination if she did not take the vaccine or have an approved accommodation. When she refused the vaccine, co-workers insulted, harassed and ridiculed her. She "interpreted the [emails from admin] demeaning and humiliating," and was terrified that she "would suffer adverse actions for not complying with a mandate that violated [her] body and her religiously held beliefs." Ms. Meyer experienced such grave work hostility that a co-worker had to physically be removed from her office for yelling and swearing when they were discussing the mandate and the potential of being fired. The Command's policies and actions resulting in assault, extreme harassment, segregation, and myriad other indignities forced Ms. Meyer to retire five years early, sacrificing substantial pay and benefits in addition to hundreds of thousands of dollars in retirement pay.

FIRST AMENDED COMPLAINT

28

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

52)     Plaintiff Karen A. Newman has worked for the Navy for the past 14 years and is currently a Supervisor Facility Operations Specialist. She has received numerous awards and has always exceeded expectations in her performance reviews. Ms. Newman holds religious beliefs which prohibit her from taking the vaccine she believes her "body is a gift from God." She is diligent in her faith, including trying to eat raw foods, avoid synthetics, sugar, caffeine, processed foods, etc. After the heavy-handed threats from her leaders about the vaccine mandate, Ms. Newman developed an ulcer, was constantly nauseous, and lost 15 pounds. She and her husband were forced to sell their home to reduce their debt in case she lost her job. She suffered ridicule and harassment from those who did not respect her religious objections, with one coworker claiming, "if people are that stupid (not to get the vaccine), they deserve to be fired." The hostile environment became so severe that Ms. Newman was forced to leave her job and retire early. She was devastated to lose the job she loved and suffered financial harm from the early retirement.

53)     Plaintiff Dennis G. Noah has worked for PSNS for 10 years as a Supervisor for Shop 56. He has received numerous awards, including 16 Special Act or Service awards, five Performance awards, Excellence in Leadership, Employee of the Year, and others. Mr. Noah has sincerely held religious beliefs which cause him to decline the COVID-19 vaccine. He filed a Religious Exemption on November 7, 2021. Mr. Noah has "never felt more harassed or intimidated in my 9 years of working here." Mr. Noah has experienced countless forms of discrimination, harassment, intimidation, coercion, segregation, professional and interpersonal humiliation as a direct result of his sincerely held religious beliefs. The stress has been so great for him that he has been diagnosed with adrenal fatigue, and has seen co-workers, "grown men and women on my crew crying," because of the discriminatory policies of PSNS. Mr. Noah

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

ended up get the vaccine and stated he was heavily discriminated against before he got it.

54) Plaintiff Tavis J. North is the Assistant Chief Test Engineer for the USS Louisiana and the USS Pennsylvania and has worked for PSNS for 12 years. Mr. North retired from the Navy in 2010 with 24 years of service. Mr. North has religious beliefs which cause him to decline the COVId-19 vaccine. Because of the PSNS polices on the COVID-19 vaccination, Mr. North has lost sleep, appetite, weight, hope, and patience because of the debilitating nervousness. "The threat that I would be disciplined for my convictions and spiritual beliefs," and the unknown of what the future will bring was extremely stressful and overwhelming. Mr. North experiences PTSD whenever he opens an email from Capt. Mosman, "all I can think of is this another mandate or hoop I have to jump through to keep my job."

55) Plaintiff Steven James Wilhelm Olson has worked for PSNS as Nuclear Process General Foreman for Marine Machinery for 9 years. Mr. Olson has received multiple awards for his service and performance. Mr. Olson objects to the COVID-19 vaccine because of his religious beliefs. "I strongly believe and sincerely believe that through the power of prayer it can heal all sicknesses." Mr. Olson has endured various forms of discrimination, harassment, intimidation, coercion, segregation, professional and interpersonal humiliation and countless instances of discriminatory behavior as a direct result of his sincerely held religious beliefs.

56) Plaintiff Michael Ormiston is a Non-Nuclear Ships System Inspector at PSNS, where he has worked for over 14 years. He received multiple awards and recognitions for excellent work performance. Ormiston's religious beliefs prevented him from taking the COVID-19 vaccinations. Mr. Ormiston submitted a religious exemption request, but it was never adjudicated. Ormiston reports that the emails he received from Captain Mosman between September 2021 and January 2022 made it clear that there was no concrete plan to provide for

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

religious accommodations for those who were religiously opposed to receiving COVID-19 vaccination.  Captain Galinis' statement that the unvaccinated would not be able to work for the Navy caused Ormiston to experience physical sickness and significant fear for his job security.  Because of his unvaccinated status, Ormiston was prevented from traveling for work, which caused him to lose valuable job experience and extra pay.  Like other Plaintiffs he experienced discriminatory treatment such as testing requirements and travel restrictions that did not apply to other employees who did not share his religious beliefs. As a result of the experience of religious discrimination by his employer and fear for his job security, Ormiston experienced a disruption of peaceful family life, a home environment of constant fear and anxiety, and a need to take multiple sick days to deal with his stress and anxiety levels. Because of the workplace vaccine mandates, the arrival of his third child brought him heightened stress, given the financial difficulty of providing for a newborn when important job opportunities were being withheld and his overall job security was threatened.

57)    Plaintiff Linda Popp worked for PSNS for almost 19 years. Popp has been awarded numerous awards during her employment. Popp's religious beliefs prevented her from submitting to COVID-19 vaccination. She submitted a religious exemption from vaccination and testing but never got a response.  Popp read in the emails sent by Captain Mosman that the Navy's protocols for processing religious exemptions were undetermined; however, the same emails presented a deadline by which all employees had to be vaccinated. Popp reports that there was still no guidance on submitting religious exemption requests 12 days before the vaccination deadline. The email from Captain Mosman that stated that limited exemptions would be granted only when legally required, suggested to her that her request might not be granted. Furthermore, Vice Admiral Galinis's email, which stated that no unvaccinated persons would work for the

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

Navy, contributed to Popp's understanding that she could not successfully submit a religious vaccine exemption. Popp reports that she went for an interview with the SWFPA Officer at Bangor, and the interviewer offered to conduct the interview without masks since everyone in the room was vaccinated. Popp declined to remove her mask because she was unvaccinated. Popp did not receive a job offer after this interview and she felt that it was because she signaled her status as someone who objected to the vaccine. Popp was prevented from working on submarines because of her religious beliefs against the vaccine and was fearful of losing her job. She suffered insomnia, loss of focus, headaches, and muscle pain because of stress-induced tension. Popp had to see a chiropractor to alleviate this pain and took extended FMLA leave from work on account of the physical, stress-related symptoms she suffered. Ultimately, Popp was forced to retire two years earlier than planned because of the stressful work environment, which forced her to lose the extra retirement funds she would have otherwise received.

58) Plaintiff Karel A. Pruiett is a Nuclear Engineer and has worked for PSNS for 19 years. Mr. Pruiett has received multiple recognitions and awards. Mr. Pruiett has religious beliefs which strongly prohibit him from taking the COVID-19 vaccination. During the pandemic, he endured discrimination, harassment, threats and coercion., including listening to a co-worker suggest in a group meeting that employees should be "*marked* based on their vaccination status." Mr. Pruiett was extremely upset and suggested that being "marked" would be like Jews having to wear stars like "in Nazi Germany." Mr. Pruiett submitted his religious exemption on November 2, 2021, to the Administrative Office to which he was instructed to take it. However, the office gave the paperwork back to him because "they did not know what they were supposed to do with [his] submittal." Fearful of missing the deadline for submission, he insisted they take his paperwork. The constant harassment and uncertainty about the process and policy for filing a

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

religious exemption created anxiety and stress for Mr. Pruiett.

59)     Plaintiff Chelsea K. Queen is currently a Facilities Planner at PSNS and has worked at PSNS for 10 years. She has received numerous awards for her performance. Ms. Queen has religious beliefs which cause her to decline the COVID-19 vaccination. She states that PSNS policies on the vaccine mandate "made [her] feel as though it was and is a witch-hunt for those unvaccinated." Co-workers "kept saying it's a done deal and that those that don't get the vaccine will be fired." Many discussed what great job opportunities would be available after everyone who objected to the vaccine got fired. The work environment was extremely stressful, and she suffered from sleeplessness, loss of appetite, anxiety, fear, and frustration.

60)     Plaintiff Kenneth R. Schlaudraff, IV is a Nuclear Engineer who has worked at PSNS for almost eight years. Mr. Schlaudraff's religious beliefs prohibit him from taking the COVID-19 vaccination. He is a Pro-Life Christian and cannot support the practice of the "termination of human life." He was forced to submit to regular testing when he declined to take the vaccine and was "outed" when he had to pick up test kits publicly in large brown paper bags. He struggled as the COVID-19 policies changed frequently, and those with religious objections to the vaccine were always treated differently than those who did not. Defendants required masks for religious objectors but not for the unvaccinated. Religious objectors who had close contact with someone with COVID-19 were forced to use personal leave while those who were vaccinated were permitted to use administrative leave. He and others were not permitted to travel and therefore lost training and development opportunities. Mr. Schlaudraff said the term "unvaccinated" came to be simply a euphemism for "religious objector."

61)     Plaintiff Melvin John Schow has worked for PSNS since 2003, his current position is an Electrical Engineering Technician. He has received numerous individual and group

FIRST AMENDED COMPLAINT

33

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

awards for his work performance and has never received any disciplinary actions. Mr. Schow has religious beliefs which prevent him from taking the COVID-19 vaccination. PSNS treated him differently than vaccinated individuals, "shar[ing] my personal medical information with other non-medical personnel and was pulled aside … and told that I was identified as … needing to test twice weekly." PSNS's policies and administrators assume that "I am their slave and they own me [sic] mind body and soul." Mr. Schow has suffered loss of sleep, stress, anxiety and exacerbation of a respiratory disease that caused him to miss work.

62)     Plaintiff Antony Scotti is a Marine Machinery Repairer and has worked at PSNS since 2015. He has received awards for excellence in his performance. Ms. Scotti has religious beliefs which cause him to decline the COVID-19 vaccination. "My body is a temple of the Lord …that is meant to be unaltered by unclean things." "Every day going into work was a stressful experience." Mr. Scotti has had numerous physical effects from the stress, mental burdens and anxiety because of PSNS's policies. He has endured various forms of discrimination, harassment, intimidation, coercion, segregation, professional and interpersonal humiliation, privacy breaches and countless instances of discriminatory behavior as a direct result of his sincerely held religious beliefs. Still, Mr. Scotti has no response to his Request for Religious Accommodation.

63)     Plaintiff Garrett Seick has worked for PSNS since 2011 as Media Operations Group Supervisor and is a 30%-plus disabled veteran. He has received several awards and promotions over the years. Ms. Seick's Christian beliefs prevent him from taking the COVID-19 vaccine. He suffers from serious medical issues, including having had a triple heart bypass in 2021. He was placed on anxiety medication and almost lost his 26-year marriage because of the stress from the threat of losing his job, including income, health insurance and the ability to

FIRST AMENDED COMPLAINT

34

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

provide for his family. Mr. Seick has experienced substantial discriminatory behavior from PSNS's policies and has been made to feel "disrespected and disenfranchised" for his religious beliefs. He complained to Captain Mosman about the harassment, but Mosman took no action. Mr. Seick states, "So much for respecting every individual. So much for my religious freedom ... and my physical and mental health and wellbeing."

64)     Plaintiff Holly L. Smith has worked for PSNS as a Management and Program Analyst for the past two years and has been employed by the PSNS for nine years. She has received numerous awards, including monetary and non-monetary for "going above and beyond my job to help people, employees, managers and the command." Ms. Smith's non-denominational Christian beliefs prohibit her from taking the COVID-19 vaccination. The PSNS's polices have created a tremendous strain on her health, requiring counseling and medication to deal with the threats, intimidation, work hostility, and professional and interpersonal humiliation she has suffered because of her religious beliefs. The discriminatory behavior has exacerbated her pre-existing conditions, such as asthma, high blood pressure and autoimmune disorders. She states, "The damages it has caused me and my family are numerous."

65)     Plaintiff Donald Smithhisler is a Risk Manager and has worked for PSNS since 2005. Mr. Smithhisler' Christian beliefs prohibit him from submitting to the COVID-19 vaccination. Mr. Smithhisler experienced an adverse action by PSNS and was demoted to the "least desirable risk management position with [his] current project." The impacts to his professional and financial job performance have been extensive and "UNDULY HARD on me." His travel was restricted, he suffered multiple injuries to his professional standing by others who were "vaccinated," and he was reassigned to a building and training in a nearby town almost 60-minute drive from PSNS, all as a direct result from his religious beliefs.

FIRST AMENDED COMPLAINT

35

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

66)    Plaintiff Eric Soliday Sr. is a lead welder at PSNS, where he has worked for the past 15 years. Mr. Soliday has religious beliefs that prevent him from receiving COVID-19 vaccination. Soliday felt "extreme pressure" to take the vaccine and thus violate his religious beliefs in order to survive financially.  He searched for another job but was unable to find one that would provide similar pay and position to his job at PSNS.  His wife (Elizabeth Soliday) also worked for PSNS, and they both understood from the numerous vaccine-related emails from their leadership that their job security was seriously threatened.  Mr. Soliday was forced to test because he declined the vaccine, and his privacy was violated when he was "outed" for picking up his testing kits in public. He suffered stress and financial insecurity, marital strife, continual anxiety at home and continual stress-induced exhaustion. Soliday also reports working overtime at his job to save money as a financial precaution in the case that he might be fired for not taking the vaccine.

67)    Plaintiff and Putative Class Agent Elizabeth A. Soliday is a Business Analyst at Trident Refit Facility and has worked at PSNS for eight years.  She served in the Marines and Army for a total of 6 years prior to that. Ms. Soliday has received many performance awards during her employment, including Employee of the Year in 2015. Ms. Soliday is strongly against all vaccines based on her religious beliefs. She feels that God is "teaching her a lesson" as he moved her to avoid vaccines after her son became severely disabled after suffering vaccine injuries as a young boy. When she found out about the vaccine mandate, she made a vow to God that she would "never participate in this evil practice again." She submitted a religious exemption on November 8, 2021, which was never adjudicated. Ms. Soliday also filed a request to be exempt from the testing mandate, which inexplicably was granted, the same day she requested it. This, despite the Navy appearing to ignore all other testing exemption requests filed

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

by Plaintiffs. Ms. Soliday filtered her work emails to send every email containing "vaccine" in the subject line into a separate folder because she found them offensive, not work related, and against her religious beliefs. She got to the point where she dreaded coming into work, lost focus, was confused, and found herself forgetting things. She was forced to see a counselor and take sick leave due to the stress and fear of losing her job. PSNS's discriminatory policies and conduct have made her feel segregated, harassed, coerced, shamed, intimidated, and humiliated and have caused her tremendous physical and mental impairments (severe abdominal pains, headaches, dizziness, anxiety, loss of sleep and myoclonic jerks).

68) Plaintiff Eric Soliday Jr. is a third-year electrician apprentice at PSNS who has worked for the Navy for seven years. He has received several awards for his work performance. Mr. Soliday's religious beliefs conflict with taking a COVID-19 vaccination. Mr. Soliday submitted a religious exemption request, but it was never processed. He spent over 10 hours trying to fill out the accommodations form, only to be given a different form a few days later. The process was confusing and stressful. He did not know whether he would be approved and whether he could keep his job. PSNS's COVID-19 policies created tremendous strain and hostility in the workplace. Mr. Soliday was pushed into a fence by a co-worker because the coworker found out Mr. Soliday was not going to take the vaccination. He was forced to test regularly because he could not take the vaccine, but the testing was heavily burdensome and created job insecurity. Unlike employees who did not share his religious beliefs, he was forced to mask; however, he often got dizzy and out of breath because his worked in small spaces on submarines. Mr. Soliday has endured various forms of discrimination, harassment, intimidation, coercion, segregation, professional and interpersonal humiliation, privacy breaches and many instances of discriminatory behavior as a direct result of his sincerely held religious beliefs.

FIRST AMENDED COMPLAINT

37

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

69)     Plaintiff Joshua L. Stowers is a Materials Handler who has work at PSNS for three and a half years.  He has received awards for his work performance several times. Mr. Stowers has religious beliefs which strongly contradict taking the COVID-19 vaccine. The oppressive emails and comments from senior leaders, (particularly Galinis and Mosman) caused his distress and made him fear for his job and his family.  He has suffered stomach upset and lack of sleep and he continually worry about how to provide for his family because of the PSNS's policies and discriminatory behavior Mr. Stowers was dissuaded by upper management from applying for a work trip to San Diego because of his "vaccine status."

70)     Plaintiff Donald Timmons has worked for PSNS for 10 years and is currently a WG-8 Shipwright worker for Shop 64.  Mr. Timmons has a positive performance record, including  multiple performance incentives, time off awards, and "Puget Demonstrated Quality" awards during his career.  Mr. Timmons was raised to believe "the Holy Bible is the Word of God" and views the vaccine mandate as "a rejection of God's absolute authority in order to comply with secular authority."  As such, he filed a religious accommodation request to be exempt from the vaccine, but as with all other plaintiffs, it was never adjudicated.  Mr. Timmons was forced to test in order to keep his job and was denied multiple Temporary Duty Travel assignments ("TDY"s) for which he was on a volunteer list. In December 2021, he was removed from being selected for a TDY and was replaced by an individual who was less senior, less skilled (WG-5), and less qualified, but who did not have a religious objection to the vaccine and was vaccinated.  Mr. Timmons was denied many other TDYs, including one that was an opportunity for a temporary promotion.  Ironically, in September 2022, the Navy selected Mr. Timmons (who was only one of two people who volunteered to go) for TDY to Norfolk.  The

FIRST AMENDED COMPLAINT

38

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

Navy planned to file an "Unvaccinated Traveler Form," which would have allowed his travel. Mr. Timmons declined this opportunity because (among other things) he found it "hypocritical."

71) Plaintiff Hans Tolf has worked for PSNS as a Nuclear Chief Test Engineer for 19 years. He has been awarded multiple performance awards. Mr. Tolf's religious beliefs prevent him from taking the COVID-19 vaccine. "I put my faith in God to protect me from sickness and death." The intimidation and coercive measures to get vaccinated by his commanders have caused him great "on-going emotional and mental distress." "I was told by the shipyard commander that my religious convictions were prolonging a pandemic because I wouldn't get vaccinated." Mr. Tolf has suffered from many physical impairments caused by PSNS's policies and discriminatory behavior (insomnia, anxiety, etc.) and promotional and financial opportunities along with training sessions, duty travel were made unavailable to him. During COVID, he had just completed an eight-month travel assignment on February 28, 2021, and worked in an office, however once he submitted his religious exemption on November 2, 2021, he was no longer allowed to travel.

72) Plaintiff Christopher Scott Tubberville is a Supply Management Specialist and has been working for PSNS for over 10 years. He has received numerous awards within the shipyard, and between 2020-2022 alone, received nine awards. Mr. Tubberville is a devout Christian who states that, "Every part of my being was telling me that the vaccine was not something that God would want in my body." He experienced direct adverse action on the account of his religious beliefs by being denied travel for his work for not being vaccinated. He was also denied a Supervisory Supply Management Specialist position because to be qualified he was required to travel but was prohibited because of his religious objection to the vaccine. He heard people in his work area saying that "the people who refused to get the shot deserved to get

FIRST AMENDED COMPLAINT

39

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

fired and that was their own choice." His qualify of life suffered, he was not as engaged with his children due to the stress and he constantly worried about losing his job. He states, "every time I looked at them I would feel like my choices were going to hurt their life no matter how much I felt the decisions that I was making were correct and what God wanted. The mental effects from all of this has [*sic*] been hard to deal with and has had a lasting effect on me and my family."

73) Plaintiff Bryan Tyler is currently a C/980 Laborer and has worked at PSNS for eight years. He has been awarded various awards for his work performance, including several monetary and group awards. Mr. Tyler's religious "faith and conscience" conflict with receiving the COVID-19 vaccines "because of the fetal cell lines used in their production." He says, "[k]illing children in or out of the womb is an abomination to God," and therefore, he cannot consent to getting the vaccine. Mr. Taylor states:

> [The] inflammatory statements made by the President, Captain and Vice Admiral have negatively affected me. I've received several awards and have maintained good ratings, so to go from hero to zero because of my sincerely held religious belief, has caused anxiety, nervousness sleeplessness, exhaustion, and low morale.

Because he could not take the vaccine, he was forced to test against his will, and was never made aware through the confusing and ever evolving accommodations process that he had a right to request an exemption to the testing requirement. He states, "it was deceitful and invasive," and "[t]he thought of choosing between my faith and job shook me to the core." Mr. Tyler believes he lost training and promotional opportunities, was discouraged from applying for better positions and feels his "life was put on hold." Under the threat of losing his job and his livelihood, he was unable to put money down on a mortgage to give his aging mother, for whom he cared, a nice home.

74) Plaintiff Janelle M. Ward worked in Management Analysis for Ocean Engineering for PSNS. She started working for PSNS in 2011. She received numerous awards,

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

all her performance ratings were exceptional, and her position required her to obtain and hold a Top-Secret security clearance that reflected high moral character in both her professional and personal life. In addition, she was recognized with both the rare and distinct honor of being presented three Command Coins to recognize exceptional innovations, for work on the commander's Anti-Harassment and Anti-Discrimination Team. Ms. Ward has religious beliefs which cause her to decline the COVID-19 vaccine. She believes she must obey her Christian conscience, and "All life is sacred and to be honored and treated as such." Ms. Ward stated that her supervisor was well aware that she was not vaccinated. She submitted a religious exemption on November 5, 2021. Ms. Ward experienced physical and mental impairments, harassment, threats, intimidation, scare tactics, coercion, hostile work environment, humiliation, segregation, and countless other forms of discriminatory conduct based as a direct result of her religious beliefs. Her supervisor said that she would give the command reason to "sharpen their pitch forks and come after me." She was called "Wuhan Ward," by co-workers. A supervisor told her, "[W]homever doesn't comply with the mandate should be fired and fired immediately." Because of the extreme harassment and hostile work environment, Ms. Ward resigned her position and took great financial and personal losses.

75) Plaintiff Anthony Zauri was a Journeyman Electrician at PSNS, where he had worked for 11 years. Because of his excellent work performance, Zauri received multiple workplace awards. Mr. Zauri's religious beliefs prevented him from receiving the COVID-19 vaccination. Mr. Zauri reports receiving the emails from Captain Mosman which provided the vaccination deadlines and the potential for disciplinary action for the unvaccinated. Zauri had previously submitted his intent to retire in early 2022 and this email alarmed him, thinking he would need to retire early, which would have had a negative financial impact on his retirement

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540) 823-1110

pay and health insurance. Furthermore, Zauri was informed by his direct supervisors that employees who were terminated for not getting vaccinated would lose employer matching funds from their retirement accounts. In addition to the stress over his financial wellbeing, which was caused by his employer's vaccination mandates and the possibility of being dis-favorably discharged because of his unvaccinated status, Zauri experienced a discriminatory attitude of disgust from his coworkers toward those whose religious beliefs prevented them from being unvaccinated. Zauri also experienced tension from his wife because of his refusal to comply with his employer's vaccine mandate. She was vaccinated; however, they both tested positive for COVID-19 at the same time in May 2021. Mr. Zauri knew at that time that the vaccine did not prevent the spread of COVID, as he saw it with his own eyes.

76) Defendant Lloyd Austin is the Secretary of Defense, which is an agency of the United States Government. He is sued in his official capacity and in his individual capacity with respect to the RFRA claims.

77) Defendant Department of Defense provides the military forces needed to deter war, and to protect the security of the United States.

78) Defendant Gilbert Cisneros Jr. is Under Secretary of Defense. He was sworn in on August 2021 as the Under Secretary of Personnel and Readiness and is currently the Chief Diversity and Inclusion Officer for the Department of Defense. He is sued in his official capacity and in his individual capacity with respect to the RFRA claims.

79) Defendant Carlos Del Toro is the Secretary of the Navy for the United States and oversees the operations of the Department of the Navy, which include the COVID-19 vaccination, testing and masking policies at issue here. All plaintiffs are members of the

FIRST AMENDED COMPLAINT

42

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

Department that he oversees. He is sued in his official capacity and in his individual capacity with respect to the RFRA claims.

80) Defendant U.S. Navy is a branch of the United States Military in charge of warfare at sea. Its Mission is as follows: Department of the Navy will recruit, train, equip, and organize to deliver combat ready Naval forces to win conflicts and wars while maintaining security and deterrence through sustained forward presence.

81) Defendant Vice Admiral William Galinis is the Commander of the Naval Sea Systems Command. Galinis took his Commander-in-Chief's words as a lawful order to require COVID-19 vaccination of "all" his federal employees in the Navy and threatened Plaintiffs that they would not work for the U.S. Navy if they did not violate their religious beliefs by getting the vaccine. He is sued in his official capacity and in his individual capacity with respect to the RFRA claims.

82) Defendant Captain James Mosman is the Commander of Puget Sound Naval Shipyard & IMF. He had direct involvement in the implementation of COVID-19-related personnel policies that affected all of the Plaintiffs. Captain Mosman reports to Vice Admiral Galinis. He is sued in his official capacity and in his individual capacity with respect to the RFRA claims.

## STATEMENT OF FACTS

### VACCINE MANDATE

83) Health authorities declared that COVID-19 had reached pandemic status in March of 2020.

84) On December 11, 2020, pursuant to a declaration entitled, *Declaration that*

FIRST AMENDED COMPLAINT

43

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

*Circumstances Exist Justifying Authorizations Pursuant to Section 564 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3*, the U.S. Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) for the pharmaceutical manufacturer Pfizer's vaccine (the "BioNTech" vaccine), which it developed for the prevention of coronavirus disease caused by the severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2)("COVID-19" or "COVID").

85) On December 18, 2020, FDA issued an EUA for Moderna's vaccine for the prevention of COVID-19.

86) On February 27, 2021, FDA issued an EUA for Janssen (Johnson and Johnson)'s COVID-19 vaccine.

87) On January 20, 2021, President Biden issued EO 13991, which established a Safer Federal Workforce Task Force (the "Task Force") and charged it with "provid[ing] ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic." 86 Fed. Reg. 7045, 7046.

88) On April 23, 2021, the FDA amended its Janssen EUA to warn of a "very rare and serious type of blood clot in people who receive the vaccine."

89) On September 9, 2021, the President issued Executive Order ("EO") 14043, which required all federal employees to be vaccinated, subject to such exceptions as required by law." 86 Fed. Reg. 50989. The order tasked every federal agency with implementing the EO to the extent consistent with applicable law, *Id.* at 50990. The Agencies were to receive "implementation" guidance from the Task Force, which would issue guidance within seven days. *Id*.

FIRST AMENDED COMPLAINT

44

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

90)     Simultaneously, the President stated that while "fully vaccinated" individuals are "highly protected from severe illness even if [they] get Covid-19," and being fully vaccinated renders these individuals "as safe as possible," he was nonetheless issuing vaccine mandates "to protect vaccinated workers from unvaccinated co-workers." *Id.* Katie Rogers & Cheryl Gay Stolberg, *Biden Mandates Vaccines for Workers, Saying, 'Our Patience Is Wearing Thin,'* NEW YORK TIMES, (September 9, 2021, updated November 12, 2021), at

https://www.nytimes.com/2021/09/09/us/politics/biden-mandates-vaccines.html.

91)     The President laid blame for the spread of COVID-19 squarely on the unvaccinated, saying vaccinated America was growing "frustrated" with the 80 million people who have not received shots and are fueling the spread of the virus. *Id.* "We've been patient, but our patience is wearing thin, and your refusal has cost all of us." *Id.*

92)     Yet as early as August 2021, it was public knowledge that while the vaccine worked well in preventing severe illness and death, it did "not prevent transmission" of the disease, particularly as it related to the Delta variant, which comprised 93% of all cases at the time. Holcombe and Maxouris*, CDC head says COVID-19 vaccines prevent severe illness and death, but they can't prevent transmission*, CNN.COM, (August 16, 2021), at

https://www.cnn.com/us/live-news/coronavirus-pandemic-vaccine-updates-08-06-21/h_61de1502e86060f5faf4477339928e33. *See also*, Singanayagam, Ankia, PhD, *et al, Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study,* The Lancet, Infectious Diseases, October 29, 2021,

https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00648-4/fulltext (British study finding that "fully vaccinated individuals with breakthrough infections have peak viral load

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts").

93)    Defendants began implementing the mandate, and immediately made it clear that absent "acceptable evidence which demonstrates that you are prevented from complying with this vaccine requirement because of a legally mandated exception . . . your failure to be fully vaccinated . . . may result in *disciplinary action up to and including removal from federal service.*" *See, e.g.,* Commander, Puget Sound Naval Shipyard and Intermediate Maintenance Facility to Dana D. Gustafson, October 12, 2021, Notice of Requirement – Mandatory Coronavirus Disease 2019 Vaccination, 12792, 100/218. (Emphasis added).[5]

94)    When defendants later instituted a testing mandate for employees whose religious beliefs prevented them from taking the vaccine, the Defendant's explicitly stated that "unvaccinated employees who fail to take the COVID-19 screening test. . . *will be sent home and marked Absent Without Leave until they comply*. Failure to follow these instructions. . . may result in *disciplinary action*." All Hands Update #12 To Federal Employee EO Implementation, December 13, 2021 ("All Hands Update") (emphasis added).

95)    This set the stage. When Captain Mosman communicated to PSNS & IMF on September 24, 2021, that all employees must be fully vaccinated no later than November 22, 2021, Plaintiffs knew immediately that the mandate was anything but voluntary. They had three choices: (1) submit to being injected with a vaccine that had been developed at "Warp Speed," employed medical technology never tried on humans, and had only received emergency approval

---

[5] Note that every employee received a copy of this memorandum and was required to provide their signature indicating that they received it. *Id.at ¶12.* Many of Plaintiffs signed under duress. *Id.*

[5] Captain Mosman sent numerous email updates to the employees of the Command, with the subject line "All Hands Update #X". Accordingly, each email referenced herein will be referred to by number and date as "All Hands Update #X."

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

(2) apply for *and* be granted a "legally mandated exception," or (3) lose their jobs. All Hands Update #4, September 24, 2021. These ominous choices laid the foundation for the coercion and heavy-handed pressure that ensued.

## PRESSURE AND COERCION BEGAN

96)     In his September 24, 2021, email, Commander Mosman stated that the Department was still waiting for legal guidance on how the exemption process would work, but that deadlines were "fast approaching." *Id.* He stated that employees should "consider their options sooner rather than later," even though "details surrounding medical or religious accommodations are still unknown." *Id.*

97)     On September 29, 2021, Captain Mosman upped the pressure, announcing, "The only way someone can stay employed at PSNS & IMF is to be vaccinated or be exempt on a legitimate medical or religious basis." All Hands Update # 5, September 29, 2021. "If an employee does not qualify for one of these two exemptions and remains unvaccinated, a discipline process will begin." *Id.*

98)     Captain Mosman went on to note, "Those approved for medical or religious accommodations will require testing on a periodic (yet to be determined how often) basis." *Id.* Of course, no one received accommodations, but the DoD and the Navy implemented a burdensome testing requirement anyway, for "unvaccinated employees with an exemption request pending, or unvaccinated employees who are awaiting discipline." All Hands Update #12, December 16, 2021. The policy required employees with pending exemption requests to self-administer an at-home test twice weekly, "regardless of how few days are spent at work each

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

week." *Id.* (noting that employees who fail to follow the policy will "be sent home and marked Absent Without Leave until they comply.")

99)     The pressure and coercion increased when, on October 14, 2021, Vice Admiral Galinis sent an email to all Naval Sea System Command employees, stating "Frankly, if you are not vaccinated, you will not work for the U.S. Navy." *See* email from Slater, James G CIV USN COMNAVSEASYSCOM DC (USA) (on behalf of VADM Bill Galinis) to [Distribution List], October 14, 2021 ("Galinis All Hands Note, October 14, 2021"); see also, All Hands Update #7, October 14, 2021.

100)     Plaintiffs, who were religious objectors, noticed what was missing. Galinis did not offer a commitment to protecting employees' religious freedoms or an assurance that the Navy would work with them to protect them from government coercion and overreach. He did not mention the opportunity to apply for a religious exemption. Rather, in making such a bold statement, he wrote what he knew to be true as a matter of practicality. The government ordered its employees to be vaccinated – and it would get what it wanted.

101)     Galinis instructed employees to get vaccinated "for your career and your loved ones," the clear implication being that Plaintiffs did not care about either. *Id.*

102)     Plaintiffs perceived that their personal religious faith was in jeopardy and that they may have to choose between their beliefs and their jobs.

103)     That same evening, Captain Mosman followed up by trying to reassure employees that an accommodations process would be available, despite Vice Adm. Galinis' heavy-handed comments. All Hands Update #7, October 14, 2021.

FIRST AMENDED COMPLAINT

48

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

104) However, Plaintiffs clearly heard their senior leader's sentiment about their religious beliefs and were intimidated and fearful of making such a request, and for the future of their jobs.

<u>EVOLVING PROCESS AND FAILURE TO ACCOMMODATE</u>

105) In implementing the vaccine mandate, the DOD and the Department of the Navy did not use the religious accommodation process already in place at the time. Indeed, the Navy may not have even had a religious accommodation process prior to the pandemic. [6]

106) The Navy without explanation created a new process for requesting a religious exemption to the vaccine, separate from any existing process for any other type of religious accommodation. Office of the ASM (Manpower and Reserve Affairs) Guidance for Processing Civilian Exemption Requests from Coronavirus Disease 2019 Workplace Safety Protocols, Feb. 22, 2022.

107) The new process for filing a request for a religious exception was a moving target.

108) It was not finalized or published before requests were due.

109) Plaintiffs perceived the lack of published policy to be a strong indication that Defendants were not concerned with protecting their rights or that their religious beliefs in a context where the Defendants were also threatening their jobs.

110) In implementing the vaccine mandate, the DOD and the Department of the Navy did not use the religious accommodation process already in place at the time. Rather, they

---

[6] See, *Merlin W., Complainant v. Carlos Del Toro, Secretary of the Navy,* Appeal No. 20220002711, Agency Number 19-4523A-00428, Sept. 22, 2021 (pending final publication). In that appeal to the Navy's March 25, 2020, final decision, which arose out of an EEO claim at the PSNS & IMF location in Yokosuka Japan, the EEOC found that the Navy "did not have a process for [plaintiff's religious accommodation] request, which was not connected to a disability." In reversing the Navy's dismissal of Plaintiff's failure to accommodate claim and his claim of retaliatory harassment, the EEOC ordered the Navy to conduct training on religious discrimination and to consider putting a religious accommodation process in place. *Id.* at 10, ¶2.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

decided, without explanation, to create a new process for requesting a religious exemption to the vaccine, separate from its existing process for any other type of religious accommodation.

111) The new process for filing a request for a religious exception was a moving target. It was not finalized or published before requests were due, giving Plaintiffs no sense of comfort or security that Defendants were looking out for their rights or that their religious beliefs were valid or would be honored.

112) Defendants neither followed the existing policy nor finalized a new one. They let vaccine exemption requests linger for over a year and a half without any action or any interactive process until finally canceling it after the President rescinded the mandate, effective May 12, 2023. Email from James Mosman to [Distribution List], May 12, 2023 (All Hands Executive Order Update).

113) It is unclear to the Plaintiffs under what authority these decisions were made or by whom.

114) This uncertainty created confusion, fear, and anxiety for Plaintiffs. For example, Ms. Newman did not know where to file her accommodation request and Mr. Pruiett took his to the office where he had been directed, but the employees tried to give it back to him, claiming they did not know what to do with it.

115) Plaintiffs lived under constant threat that their jobs and livelihoods lay in the hands of a government that from the top down, appeared antagonistic to religious objections to the vaccine.

116) On October 22, 2021, Captain Mosman shared All Hands Update #8, which demonstrated and even acknowledged how confusing and frustrating the process for filing an exception was.

FIRST AMENDED COMPLAINT

50

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

117)     The Update from Captain Mosman stated that they had "finally received guidance from the Office of the Department of Defense and . . . the Department of the Navy," but it did "not give much more information than what [Mosman] shared . . . in the past." *Id.*

118)     Specifically, it stated that the guidance "did not include guidance on the processing of exception requests," yet it emphasized that employees were still required to fill out an exception request no later than November 8, 2021 (just over two weeks later). *Id.*

119)     Indeed, the guidance from DOD itself instructed senior leaders that they should "take no action on any exemption requests from DOD civilian employees," pending further information. Gilbert R. Cisneros Jr., Memorandum to Senior Pentagon Leadership, Force Health Protection Guidance (Supplement 23), Department of Defense for Corona Virus Disease 2019 Vaccination, Attestation, Screening, Testing and Vaccination Attestation, October 18, 2021.

120)     Adding to the pressure, leaders sent out contradictory information about which form should be used for making an exception request and to whom the form should be sent.

121)     For example, on October 22, 2021, Galinis sent out the Navy's "Mandatory Vaccination Plan" to all employees that stirred up additional confusion and discord, in part because it gave incorrect information about where to send exception requests.

122)     Captain Mosman tried to run clean-up for Galinis in his All Hands Update #8 (October 22, 2021) by writing, "let me tell you that you can read that email [from Galinis] but be advised that <u>HOW</u> we will implement the actions in it will be worked out and shared with you shortly."

123)     He went on to correct Galinis' instruction that told employees to send their religious exemption requests to their supervisors, which Captain Mosman indicated, "had not

FIRST AMENDED COMPLAINT

51

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

been bargained or agreed upon." Instead, he recommended they send requests to several other departments "for the time being," until a final decision was worked out. *Id.*

124) Captain Mosman admitted that the "various formats" of the accommodation forms "circulating around the command" were "likely to "confuse some people and add unnecessary stress." *Id.*

125) On October 29, 2021, Captain Mosman sent out another update requiring each employee to attest to his or her vaccination status and provide proof of vaccine. The Update also noted that exception requests would be due on November 8, 2021, but that "we still don't know how these requests will be adjudicated or at what level that would take place. . ." All Hands Update #8, October 29, 2021.

126) By December 17, 2021, (over a month after the exception requests were due), Captain Mosman wrote that although the deadlines for filing for an exemption and for getting vaccinated had already passed, "what the [adjudication] process will look like is still being discussed by higher headquarters and will be shared once it is finalized." All Hands Update #10, December 17, 2021.

127) In the same communication he wrote how excited he was that over 81% of employees were vaccinated. *Id.*

128) Throughout the process, the fear of not knowing how to file an exemption request, when or how the Navy would make a decision and indeed whether the command would frown upon such a request, led to fear of job loss, severe anxiety, depression, and other stress-related problems that affected many Plaintiffs' personal and professional lives.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

129)     At no time were Plaintiffs' religious beliefs taken seriously or considered carefully through a process designed to protect employees' rights and balance them against the Defendants' legitimate business needs.

130)     There was no announcement by leadership that the Department had a legal (and moral) obligation to protect their religious liberty nor did leadership acknowledge that their objections may be legitimate.

131)     Rather, the Department focused solely on "continu[ing] to work toward *compliance with President Biden's Executive Order* on Requiring COVID-19 Vaccination for [all] Federal Employees." All Hands Update #10, November 8, 2021 (emphasis added).

132)     Indeed, the Navy made clear that when it did finally begin to consider religious accommodation requests, it would not consider them until *after* it had processed medical accommodation requests. All Hands Update #12, December 13, 2021.

133)     Sadly, by November 22nd (the deadline for getting the vaccine), some Plaintiffs, despite their sincere religious beliefs against it, succumbed to the pressure to abandon their religious beliefs and took the vaccine.

134)     It appears the Navy did eventually publish a new accommodations policy for exemptions to the vaccine and other COVID-19 related protocols, but not until February 9, 2022, months after requests for accommodations were due (on November 8, 2021). Office of the ASN, Manpower and Reserve Affairs, Guidance for Processing Civilian Exemption Requests from Coronavirus Disease 2019 Workplace Safety Protocols, February 9, 2022.

135)     According to all information available to Plaintiffs, the Navy did not distribute or share the policy with employees.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

136) Nonetheless, in addition to requiring an "interactive dialogue" with the employee, the policy states, "All requests should be processed as quickly as possible, especially given the critical timelines associated with ensuring workplace safety during the COVID-19 pandemic. Absent extenuating circumstances, all religious accommodation determinations shall be made within **45 calendar days**." *Id.* at 9. (emphasis added).

137) The Navy followed no policy at all, and when it finally created its COVID-19 vaccine accommodations policy, it violated the policy entirely by not engaging in any interactive process and *never* making a determination on Plaintiffs' vaccine exception requests, much less doing so within 45 days.

138) Indeed, the Navy did grant a single request for a testing exemption for Elizabeth Soliday based on her religious beliefs. It made a same-day determination in that matter, yet it did not adjudicate any testing exemption requests from other Plaintiffs. Email from Todd Daykin M CIV USN (USA) to Elizabeth Soliday A CIV US NAVY NAVB KITSAP SVD WA (USA), February 3, 2022.

139) Similarly, Mr. Gustafson never received a determination on his religious requests for exemptions to the vaccine or to the testing mandate; however, he was *granted* a religious accommodation to be exempt from working on the Sabbath just two weeks after he applied for it. Email from Anthony Crew, Branch Manager, Code 260.1, Puget Sound Naval Shipyard and Intermediate Maintenance Facility (PSNS & IMF) to Dane D. Gustafson, Mechanical Engineer, Code 260.1, PSNS & IMF, May 16, 2022 (Approval of Religious Accommodation).

140) Mr. Gustafson requested the exemption on April 28, 2021, and the Navy (appropriately) engaged him in an interactive dialogue within five days of his request. Local

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

leadership (Anthony Crew, Branch Manager, Code 260.1 PSNS) granted his accommodation just a few days after that. Email from Anthony Crew to Dane Gustafson, May 16, 2022.

141) Clearly the Navy used some written or unwritten process to provide these religious accommodations, yet it did not engage in an interactive dialogue, nor did it seriously consider any of Plaintiffs' accommodations to allow them to honor their faith and avoid having a drug injected into their arm without consent or a swab inserted into their nose.

142) When Dane Gustafson suggested teleworking to accommodate his objections to the vaccine and to testing, he received a blanket response that "full-time teleworking is not authorized to mitigate testing at this time because the telework agreement states that employees can be recalled to the office." Email from Adraine S. Weber, Code 260, CIV USN NAVSHIPYDIMF PGS WA (USA) to Dane D. Gustafson, CIV USN (USA) December 14, 2021.

143) These examples show that use of and compliance with the religious accommodations policy was as arbitrary as were decisions made thereunder.

## HARASSMENT

144) Plaintiffs received both official and unofficial communications indicating that, by exercising their religious beliefs, they were endangering the lives of others and that the DoD and the Navy desperately wanted them to comply with the vaccine mandate even if it meant acting against those beliefs.

145) Leadership coerced Plaintiffs into submitting to the vaccine by relying on the power differential between management and employees (much like in a sexual harassment case) and used both subtle and explicit means to achieve their ends. *See e.g.,* Galinis All Hands Note, October 14, 2021.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

146)     For example, as early as September 29, 2021, Captain Mosman wrote that:

> Whether you agree or disagree with the vaccination, the federal government (our employer) is focused on getting *all* federal employees fully vaccinated. . . . I believe vaccination remains our most effective defense . . . Personally, I got the vaccine to support my family, workmates, the community and not just me. . . . I absolutely respect every individual and recognize that each is entitled to their own beliefs, but I have a duty to comply with the direction given to us.

All Hands Update #5, September 29, 2021(*emphasis added*).

147)     Plaintiffs who had religious objections to the COVID-19 vaccinate and who had an exception request pending with the government were forced to submit to regular COVID-19 testing, which in many cases also violated their religious beliefs because of the invasive nature of the tests.

148)     These Plaintiffs felt pressured and harassed into complying, and many feared that raising additional objections about testing (on top of their vaccine objections) would ostracize them even more and jeopardize their jobs.

149)     The Navy publicly "outed" and shamed Plaintiffs by requiring them to pick up their testing kits and/or test in front of coworkers in obvious and embarrassing ways that broadcast to their coworkers that they were not "compliant" with the mandate, affecting their professional reputations and ability to work as a team with their coworkers.

150)     At least one Plaintiff was assaulted by a colleague because of his religious objections to the vaccine.

151)     Another was asked if employees should be "*marked* based on their vaccination status" like Jews in Nazi Germany.

152)     Yet another Plaintiff, Janelle Ward, was called "Wuhan Ward" by her coworkers.

FIRST AMENDED COMPLAINT

56

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

153) Eric Soliday Jr. was pushed into a fence by a coworker who disagreed with his religious objection to the vaccine.

154) Workers were constantly reminded that they needed to do whatever it takes to protect each other and that their "choices impact [themselves] and others around [them]." All Hands Update #13, December 16, 2021; All Hands Update #14, January 17, 2022.

155) In All Hands Update #13, dated December 16, 2021, Captain Mosman reiterated that getting the vaccine was part of each employee's duty "to protect each another."

156) He reinforced his message that "every employee must take all reasonable precautions to ensure they are not infecting their co-workers with COVID-19." All Hands Update #14.

157) These frequent actions by leadership and co-workers shamed the employees who had religious objections to the vaccine, leaving them feeling like pariahs; unclean, less-than, demeaned, and ostracized.

158) The conduct was severe and pervasive, occurring daily and weekly over many months. For example, Plaintiff DuHamel received over 200 email communications related to COVID-19, many of which implicitly or explicitly called out those with objections to the vaccine for their failure to "do the right thing" in the eyes of the Department.

159) These official communications and many others fostered a hostile work environment, where ridicule in daily conversation pervaded the Department, sending the clear message that those with disfavored religious beliefs were unwanted and/or that their beliefs were unwanted.

FIRST AMENDED COMPLAINT

57

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

160)     The Department sowed division in the workplace between vaccinated employees and those with religious objections to the vaccine and allowed co-workers to mock, single-out, shame, and shun Plaintiffs because they disagreed with their religious beliefs about the vaccine.

161)     While there was talk from leadership about respecting religious beliefs, the Defendants showed otherwise in their actions.

162)     Indeed, the insults and harassment were pervasive. Captain Mosman reminded employees in his COVID-19 Updates that harassment was not permitted, yet he took no specific action against individuals who engaged in such conduct, nor did he interview or seek redress for employees who suffered such harassment.


<u>OTHER ADVERSE ACTIONS</u>

163)     The Department used duress, intimidation, and coercion to force Plaintiffs to give up their religious convictions and just "get the jab."

164)     Defendants' failure to use the current accommodations policy or to cobble together a new policy for filing a religious accommodation request to the vaccine was based either on incompetence or total disregard for Plaintiffs' religious beliefs.

165)     To contrast, the Navy had a clear, published procedure for progressive discipline for failure to take the vaccine. Cisneros Memo, October 18, 2021 at 6, ¶3.

166)     Discipline included consequences such as a five-day period of "counseling and education," to 14-day suspensions without pay, to "removal from Federal service for failure to follow a direct order." *Id.*

FIRST AMENDED COMPLAINT

58

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

167) Some Plaintiffs went against their own religious beliefs and got the vaccine because they felt pressured and bullied by leadership and colleagues and did not want to risk termination.

168) Some Plaintiffs had to file multiple religious accommodation requests because of the lack of process.

169) All continuously lived in uncertainty about their future. They never received a decision on their request for a vaccine exemption.

170) Indeed, they never received a response.

171) They were repeatedly threatened with disciplinary action, including being designated as AWOL or terminated if they did not test, mask or take the vaccine.

172) When responding to a question about whether employees would be terminated for failing to take the vaccine, Captain Mosman responded that, "No one will be fired effective 11/23" (the date after vaccines were due). "If an employee is not fully vaccinated, he/she/they will be subject to disciplinary actions up to and including removal. However, due process rights will be respected." All Hands Update #5, September 29, 2021.

173) Captain Mosman further stated that the Department was no longer threatening to designate the unvaccinated and untested as AWOL and those employees would still be allowed to come to work; however, they would need to seek counseling and would still be subject to discipline, including removal. *Id.*

174) In requiring COVID-19 testing of only employees who objected to the vaccine, the Defendants clearly treated employees with religious objections differently than others.

FIRST AMENDED COMPLAINT

59

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

175)   As indicated above, It was public knowledge that vaccinated employees were still at risk of contracting and transmitting COVID-19 at least as early as August and September 2021.

176)   However, the Navy continued coercing all employees to get vaccines and subjecting those with religious objections to the vaccine to testing that often violated their religious beliefs and incited ostracism by coworkers because it was made public.

177)   Indeed, Captain Mosman admitted that vaccinated employees were spreading the disease, but he had his orders and needed to enforce the mandate. Email from James Mosman to Lorenzo Perez, July 18, 2022.

178)   Defendants justified such actions based on the premise that "rates of infection and transmission" were lower for vaccinated than unvaccinated.

179)   Even that justification, however, was suspect. Internally, Mosman emailed Galinis every two weeks with updated case information, including the number of new positive cases and the percentage of break-through cases during the prior two weeks.

180)   Per Mosman, breakthrough rates among the vaccinated averaged about 45% from September 2021 to early February 2022; nearly half of all cases.[7]

181)   Yet, Captain Mosman represented to all employees in All Hands Update #12, December 13, 2021, that since "mid-summer" 2021, the breakthrough rate was only about 30%.[8]

---

[7] Captain Mosman reported to Galinis that breakthrough rates were at 33% for the two weeks prior to September 17, 2021; 23% as of October 1st; 39% as of October 15th; 45% as of October 29th; 53% as of November 12th; 47% as of November 26th; 76% as of December 10th; and 81% as of February 4, 2022. Letter from J.A. Garcia, Privacy Act-Program FOIA Coordinator to Mark Arvidson (May 13, 2022 (RESPONSE ICO PSNS 2022-000001/ DON-NAVY-2022-005241)(Response to FOIA Request).

[8] Note, Plaintiffs are unaware of actual breakthrough rates prior to September 2021 since their FOIA request did not provide data going back to the summer of 2021.

FIRST AMENDED COMPLAINT

60

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

A representation that hardly seems consistent given the current breakthrough rate of 76% he gave to Galinis just three days earlier.[2]

182) Captain Mosman further stated that, "[w]ith a large majority of the workforce being vaccinated, it is natural to see an increase in number of breakthrough cases. We know no vaccine is 100% effective, but we also know the vaccination reduces the risk of COVID-19 and its potentially severe complications, hospitalization, and death." *Id.*

183) While one would expect to see a higher number of breakthrough cases as more people became vaccinated, one would not expect to see a higher *rate* of infection among the vaccinated simply because more employees were becoming vaccinated.

184) These statements appear to attempt to whitewash the data and obfuscate the fact that large percentages of vaccinated employees were still contracting and spreading COVID-19.

185) The Command also reported a substantially higher number of new cases to employees than they did to the unions.

186) In an All Hands COVID-19 STATUS UPDATE & GUIDANCE, the Public Affairs Office indicated that COVID-19 positive cases from January 12 to January 26, 2021 were 730. Yet reports of COVID positive cases to the unions indicated only 272 new cases of in *all of January*. Email from Jarred Hoskinson to Katherine Osmanson, *et al,* February 7, 2022.

187) Finally, Captain Mosman claimed on December 21, 2021, that employees who objected to the vaccine at PSNS & IMF were *three times* more likely to test positive over the prior "several weeks" than those who were vaccinated. All Hands Update #13, December 16, 2021.

188) Yet he reported the breakthrough COVID-19 rates to Galinis as 81% as of December 2021.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

189) Plaintiffs perceive these discrepancies to be an attempt to inflate case numbers while deflating breakthrough infection rates as part of Defendants' efforts to coerce Plaintiffs into getting the vaccine regardless of their religious objections.

190) In fact, as late as July 15, 2022, Captain Mosman admitted that it was "not the unvaccinated" who were causing the spread of the disease.

191) Yet he rolled out another testing mandate for these religious objectors (which had been on pause because of low transmission rates), based on an increase in cases in the community.

192) He admitted that "higher level policy" was pushing the new testing requirement would need to determine who in leadership to talk to, to "influence further thought on the policies as we moved from pandemic to endemic." Email from James Mosman to Lorenzo Perez, (July 18, 2022).

193) Defendants never explained why any transmission by the vaccinated was acceptable or why testing all employees wasn't the more prudent action to ensure the safety of all.

194) Indeed, when Plaintiff Soliday initially asked if it was "safe" to come into the office prior to the deadline for vaccines being required, Captain Mosman ensured her it was safe because of what he called the "Protective Triad," (good hygiene, social distancing and wearing a mask). Email from James Mosman to by Elizabeth Soliday, September 27, 2021. 6

195) This Protective Triad would have been the least restrictive means of accommodating Plaintiff's religious objections to the vaccine and to invasive testing, but the Navy never offered or even discussed it as a reasonable accommodation, despite being used as

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

the sole means of protection in the fall of 2021 and being assured that it was a "safe" option by Captain Mosman. *Id.*

196) Even as late as January 2022, the Department reaffirmed its commitment to testing these religious objectors, after halting the vaccination requirement based on a new court case that enjoined the Presidential vaccine mandate. All Hands Update #15, January 21, 2022.

197) Captain Mosman admitted in that same communication that vaccination did not stop the spread of the disease.

198) Many Plaintiffs lost the ability to travel and earn overtime, which was an essential as part of their job and a substantial amount of their pay.

199) Many Plaintiffs were denied training and career opportunities and/or lost job responsibilities.

200) Many Plaintiffs suffered severe emotional harm, and some were forced to go on medication and/or seek physical or mental health support because of the stress and coercion from leadership and coworkers.

201) Many Plaintiffs were forced to resign or retire early because of the intolerable, oppressive, and hostile work environment, as well as the explicit threat of termination.

202) Many Plaintiffs had to take leave to deal with the stress and anxiety of the work environment and the threats of termination, as well as to look for new jobs and new homes to try to leave the Department prior to their termination.

203) Many Plaintiffs suffered lost pay, lost benefits, and lost retirement income when they were forced to leave the Department or be fired.

204) Many Plaintiffs suffered marital and family discord and separation.

FIRST AMENDED COMPLAINT

63

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

205) Many Plaintiffs repeatedly experienced physically uncomfortable testing for COVID-19 under duress and against their religious beliefs because they felt pressured and bullied by the Department.

206) Many Plaintiffs were required to conduct the testing on their own time and without pay.

207) The Department did nothing to mitigate the hostile work environment or the discriminatory acts of its leaders.

208) On May 5, 2022, the FDA strictly limited the use of the Johnson & Johnson vaccine, one of the vaccines that would have fulfilled the mandate.

## SOLIDAY'S CHARGE

209) Plaintiff Elizabeth Soliday filed an Equal Employment Opportunity complaint with the Department on October 28, 2021, which was formalized as a class complaint on January 27, 2022.

210) On February 6, 2023, the EEOC Administrative Judge issued an order denying class certification and the Ms. Soliday's underlying claims.

211) The Department issued a letter fully implementing the decision of the Administrative Judge on February 24, 2023.

212) Each Plaintiff in this action was a party to Ms. Soliday's EEO charge and has thereby exhausted his or her administrative remedies.

213) On May 12, 2023, President Biden rescinded E.O. 14043, thereby revoking the government-wide COVID-19 vaccine mandate for federal employees.

214) While this was the right action, after more than a year and half, this recission is too little too late. The harm and been done and it still continues.

FIRST AMENDED COMPLAINT

64

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

## CLASS ACTION ALLEGATIONS

215) Certification of a class is appropriate in this action, with Plaintiff Elizabeth Soliday as the representative class agent.

216) Federal Rule of Civil Procedure 23(a) provides four criteria for courts to determine whether class certification is appropriate:

> (a) The class is numerous that joinder of all members is impracticable;
>
> (b) there are questions of law or fact common to the class;
>
> (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (d) the representative parties will fairly and adequately protect the interests of the class.

217) Here, Complainants meet all four criteria.

## NUMEROSITY

218) To satisfy the numerosity requirement under rule 23, joinder of all parties "need not be impossible, as long as potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010)(citations omitted).

219) The numerosity requirement "is not tied to any fixed numerical threshold—it requires examination of the specific facts of each case and imposes no absolute limitations. In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Id*. (Citations omitted).

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

220)   Here, the class includes 59 identified members, with the possibility of many more, and would include all PSNS employees who requested a religious accommodation to the vaccination requirement and did not receive one.

## COMMONALITY

221)   "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)(Citations omitted).

222)   Here, all PSNS employees who requested a religious accommodation to the vaccine mandate would have experienced the same communications from PSNS leadership and would have experienced the same discriminatory acts and overall hostility.

223)   This is borne out clearly in the factual pleadings above.

## TYPICALITY

224)   "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. The typicality requirement looks to whether the claims of the class representatives are typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011)(Citations omitted).

225)   As indicated above, Elizabeth Soliday's interests are aligned with the other members of the class. The events that gave rise to the harms she suffered are the same as the others in the class, as the policies that gave rise to those harms were PSNS-wide policies creating

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

an approach that applied to all individuals who requested a religious accommodation to the vaccine requirement. The hostility and lack of accommodation she experienced was the same experience that others experienced throughout the shipyard.

## ADEQUACY OF REPRESENTATION

226) "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997)(Citations omitted).

227) Elizabeth Soliday meets these requirements. She was at all relevant times a PSNS employee who requested a religious accommodation that she never received. She experienced the same policies, the same communication of these policies, and the same culture that other potential class members experienced. She is in all ways adequate to represent the interests of the class contemplated here.

## ADDITIONAL CONSIDERATIONS

228) Rule 23 goes on in subsection (b) to require plaintiffs to identify additional justifications for class certification. Here, class certification is appropriate according to Rule 23 (b)(3).

229) Here, as indicated in Rule 23(b)(3), "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

FIRST AMENDED COMPLAINT

67

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

230)	Nearly all of the Plaintiffs named here have already proceeded together as a putative class through the administrative phase.

231)	All relevant actions occurred within this forum.

232)	Relief on behalf of one member of the putative class would necessarily apply to the entire class of individuals identified here and who have yet to be identified. The substantial similarity in experience and in harm mitigates any interest of the individual class members' need to prosecute these claims. To the extent the harms differed (e.g. those who remained employed versus those who experienced constructive discharge), they fall within definable categories that are easily manageable. A class action would be the superior method by which to adjudicate their claims because of the similarities of the experience of the individual members, who all experienced the same policies and the same culture within PSNS.

## CAUSES OF ACTION

### COUNT I
### TITLE VII RELIGIOUS DISCRIMINATION
### FAILURE TO ACCOMMODATE

233)	Plaintiffs restate the foregoing paragraphs as fully set out herein.

234)	Under Title VII, a plaintiff alleging religious discrimination based on a failure to accommodate:

> Must first set forth a *prima facie* case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement.

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (citing *Heller v. EBB Auto. Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993)).

235)	The term "religion" includes:

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

All aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

42 U.S.C. § 2000e(j).

236) As the Supreme Court noted:

The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

237) A belief "can be religious even if it is not acceptable, logical, consistent, or comprehensible to others." *US. v. Zimmerman*, 514 F.3d 851 (9th Cir. 2007).

238) Indeed, the Supreme Court has made clear the deference that is required in cases of religious freedom:

Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's" "religious observance and practice." […] when an applicant requires an accommodation as an "aspec[t] of religious . . . practice," it is no response that the subsequent "fail[ure] . . . to hire" was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S. Ct. 2028, 2034 (2015)

239) Plaintiffs hold sincere religious beliefs that conflict with Defendants' COVID-19 vaccine mandate and in some cases, its testing mandate.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

240) The sincerity of their faith is self-evident. Plaintiffs risked everything (job loss, loss of pay, placement on AWOL status, loss of travel, training and career opportunities, humiliation, etc.) to avoid the vaccine and protect their strongly held beliefs.

241) Plaintiffs informed Defendants that their sincerely held religious beliefs conflicted with Defendants' COVID-19 vaccine mandate and requested religious accommodations, albeit using an ever-evolving, imprecise accommodations process.

242) Defendants "discharged, threatened, or otherwise subjected Plaintiffs to an adverse employment action" because their faith precluded them from taking the vaccine. *Peterson,* 359 F.3d at 606.

243) Here, Defendants repeatedly threatened Plaintiffs, verbally and in writing, with discipline, placement on AWOL status and removal from the Navy if they failed to get vaccinated without an approved accommodation.

244) Numerous Plaintiffs were forced to resign because of the untenable working conditions and particularly the Hobson's choice the Defendants forced upon them: "lose your faith and keep your job, or keep your faith and lose your job." See *Keene v. City & Cty. of S.F.*, No. 22-16567 at*6, 2023 U.S. App. LEXIS 11807 (9th Cir. May 15, 2023) (unpublished) (reversing and remanding Title VII claims where Appellants purported a loss of career and pressure to violate their faith).

245) Yet, Defendants failed to adjudicate *any* vaccine accommodations. Rather, Defendants made Plaintiffs linger in a no-man's land of fear and coercion, knowing that the government held their livelihoods in its hands.

246) If Defendants had processed Plaintiff's requests in any meaningful way none of these harms would have occurred.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

247) Moreover, Defendants avoided any interactive dialogue with Plaintiffs. The legal framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business").

248) "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process – a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

249) Defendants neither requested nor proposed that Plaintiffs participate in any discussion to find a fair and legal accommodation for their religious beliefs. Indeed, Defendants appeared to subvert Plaintiffs' accommodations requests in favor of promoting as many vaccines as possible for as many employees as possible.

250) Defendants' undue delay in creating a process and responding to Plaintiffs' request was also unlawful. In the context of a Title VII religious discrimination claim, "'a week-to-week, wait-and-see posture' amounts to no accommodation at all." *EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 945 (6th Cir. 2006) (*citing EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991)).

251) In this case, Defendants specifically ordered leaders NOT to take any action on accommodations requests, pending further information.  Cisneros Memo, October 18, 2021 at 7, ¶4.

FIRST AMENDED COMPLAINT

71

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

252) Indeed, courts have held that both delay and denial of religious accommodation are deemed an "injury" in and of themselves. *Doster v. Kendall*, No. 1:22-cv-84, 2022 U.S. Dist. LEXIS 125400, at *10-13 (S.D. Ohio July 14, 2022) (in the context of a Religious Freedom Restoration Act / First Amendment case).

253) Defendants evaded any sort of "bilateral cooperation" with Plaintiffs and in doing so caused anguish for Plaintiffs who lived for over a year and half under the threat that they would be terminated if their accommodations were not granted.

254) Defendants' adjudication of other requests for religious accommodations (i.e., Mrs. Soliday's testing request and Mr. Gustafson's Sabbath request), undermines any argument that they did not have *some* process for adjudicating vaccine accommodations requests.

255) There is no information as to why Defendants did not use whatever process was already in place rather than subjecting Plaintiffs to undue fear and delay as they simply tried to protect their jobs and defend their rights under the law.

256) Further, Defendants were aware that the vaccine did not stop the transmission of COVID-19, but still required vaccination of all employees. It could have been no undue burden to allow a small group of religious believers to avoid taking the vaccine since the vaccine did not prevent transmission.

257) Defendants could have offered Plaintiffs other reasonable accommodations without encountering an undue hardship.

258) Indeed, Plaintiffs could have simply followed the "Protective Triad," which Captain Mosman declared as "safe," prior to the roll-out of the vaccine mandate.

**COUNT II**
**TITLE VII RELIGIOUS DISCRIMINATION**
**DISPARATE TREATMENT**

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

259) Plaintiffs restate the foregoing paragraphs as fully set out herein.

260) The Civil Rights Act of 1964 states in relevant part:

It shall be an unlawful employment practice for an employer –

(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, **religion**, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, **religion**, sex, or national origin.

42 U.S.C. § 2000e-2(a); § 2000e-16(a) (emphasis added).

261) Under Title VII, it is unlawful to discriminate in any aspect of employment, including:

Hiring and firing; compensation, assignment, or classification of workers; transfer, promotion, layoff, or recall; job advertisements and recruitment; testing; use of employer facilities; training and apprenticeship programs; retirement plans, and benefits; other terms and conditions of employment.

United States Department of Justice website https://www.justice.gov/crt/laws-we-enforce. *See also, Dodson v. Morgan Stanley DW, Inc*., 2007 U.S. Dist. LEXIS 85535 (W.D. Wash., 2007)

262) "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) that he was a member of a protected class, (2) that he experienced an adverse employment action (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees." *Drewery v. Mervyns Dep't Store*, U.S. Dist.

FIRST AMENDED COMPLAINT

73

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

LEXIS 93792, (W.D. Wash., 2007) *citin, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Vasquez v. County of Los Angeles*, 307 F.3d 884, n. 5 (9th Cir. 2002).

263) Plaintiffs' sincerely held religious beliefs as described herein qualify them as members of a protected class.

264) Defendants clearly had a policy of progressive discipline for failure to take the vaccine, from five-day periods of "counseling and education," to 14-day suspensions without pay to "removal from Federal service for failure to follow a direct order." Cisneros Memo.

265) Plaintiffs experienced myriad adverse employment actions. For example:

  a. Plaintiffs were frequently threatened with disciplinary action, including being deemed AWOL, being "removed" or being terminated if they failed to get vaccinated and/or tested.

  b. Some Plaintiffs were terminated while others were constructively discharged, having been forced to resign because of untenable working conditions.

  c. Many Plaintiffs experienced denial of training and development opportunities, including the opportunity career advancement and the opportunity to receive other assignments.

  d. Some Plaintiffs were denied travel opportunities, which was fundamental to their jobs and the loss of which was detrimental to their development and career growth.

  e. Some Plaintiffs were not permitted to be onsite and/or work with customers/colleagues, forcing them from office-wide gatherings and events.

FIRST AMENDED COMPLAINT

74

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

     f.  Plaintiffs who declined to accept the vaccine were forced to undergo testing, masking and other burdensome (and public) experiences. The testing itself was physically invasive and uncomfortable, while at the same time scientifically unjustified.

     g.  Plaintiffs were "outed," humiliated and ostracized when the Department publicly identified them as employees who objected to the vaccine based on their religious beliefs.

     h.  Plaintiffs were forced to use a different, invasive, and more personal procedure for requesting a religious accommodation.

266)    Plaintiffs who were not placed on AWOL status or removed from service still suffered harm. They lived under the constant duress of not knowing whether their jobs would be protected and whether their livelihoods and families would be forsaken. See *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 U.S. App. LEXIS 4347, 12 (5th Cir. 2022) (holding that plaintiffs who were subject to the vaccine mandate were "subjected to ongoing coercion based on their religious beliefs. That coercion is harmful in and of itself . . .") (*citing BST Holdings, L.L.C. vs. OSHA*, 17 F. 4th 604, 618 (5th Cir. 2021) (holding that Plaintiffs had suffered irreparable harm from being coerced into "a choice between their job(s) and their jab(s)"). *See also Feds for Med. Freedom v. Biden* 2023 U.S. App LEXIS 7018, 43 (5th Cir. 2023) ("[w]hen a regulation is directed at [plaintiffs] in particular and requires them to make significant changes, plaintiffs have suffered an injury to challenge the order even if the Government has yet to elucidate the precise consequences of failing to comply. . . Plaintiffs do not have to identify exactly how the Government will enforce the mandate; it's enough that plaintiffs face the ominous order, "get vaccinated or else" (internal citations omitted).

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

267) Plaintiffs were qualified for their positions.

268) Plaintiffs were treated differently than similarly situated employees in that employees who did not assert religious objections to the vaccine and related requirements were not terminated or threatened with termination, constructively discharged, or denied opportunities for travel, training, development and career growth.

269) These non-objectors were allowed to work on site and were not required to test, mask, or social distance.

270) They were not ostracized, harassed or demeaned by leaders and coworkers. And there were not required to use a novel, unclear, and invasive procedure for filing religious accommodations for issues unrelated to the vaccine.

271) Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation and human dignity, as well as humiliation and embarrassment because of their religious beliefs, and they will so suffer in the future.

272) Many Plaintiffs have been denied employment and placed in financial distress. They have suffered a loss of earnings and benefits, a loss of health and other insurance coverage, retirement pay and a loss of earning capacity, all because they chose to remain faithful to their religious convictions.

**COUNT III**
**TITLE VII 42 U.S.C. § 2000e, et seq.**
**RELIGIOUS DISCRIMINATION:**
**DISPARATE IMPACT**

273) Even if Defendants did not intend to discriminate against Plaintiffs based on their religious beliefs, the policy they implemented requiring vaccines of all employees had a disparate impact on employees with religious objections to the vaccine.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

274) Under the disparate impact theory of Title VII:

> A plaintiff establishes a prima facie violation by showing that an employer uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.

42 U.S.C.S. § 2000e-2(k)(1)(A)(i).

> An employer may defend against liability by demonstrating that the practice is job-related for the position in question and consistent with business necessity. Even if the employer meets that burden, however, a plaintiff may still succeed by showing that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs.

42 U.S.C.S. § 2000e-2(k)(1)(A)(ii), (C). See also, *Ricci v. DeStefano*, 557 U.S. 557, 578, (2009).

275) In this case, Defendants clearly implemented a supposedly neutral policy requiring COVID-19 vaccines for all employees.

276) Yet that policy had a disparate impact on religious believers who opposed the vaccine, which was not job related and was not consistent with business necessity.

277) Alternative means were available to Defendants that would have had less disparate impact on religious believes and still served the Defendants' legitimate needs.

**COUNT III**
**TITLE VII RELIGIOUS DISCRIMINATION**
**HARASSMENT/ HOSTILE WORK ENVIRONMENT**

278) Plaintiff restates the foregoing paragraphs as set forth fully herein.

279) As the Supreme Court noted in *Harris v. Forklift*, 510 U.S. 17, 21 (1993). the language of Title VII "evinces a congressional intent to strike the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatory hostile or abusive environment," (*citing Meritor Savings Bank, FSB v. Vinson*,

FIRST AMENDED COMPLAINT

77

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

477 U.S. 57 at 64 (1986)). The injuries are "not limited to 'economic' or 'tangible' discrimination." *Id.*

280)    "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.*

281)    To succeed on a hostile work environment claim based on race, the plaintiff must demonstrate: "(1) that he was subjected to verbal or physical conduct of a [based on his protected class]; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

282)    To determine whether conduct is severe and pervasive, the court looks at the context of the alleged harassment to determine its frequency and severity, whether it is physically threatening or humiliating, and the extent to which it unreasonably interferes with the employee's work performance. *Id.*

283)    The working atmosphere must be both subjectively and objectively abusive. *Id.*

284)    These religious believers have suffered months and years of continuous intimidation, ridicule, and insult because of their religious beliefs.

285)    Plaintiffs were treated as pariahs, disease-carriers, and disease-spreaders, regardless of whether they actually had COVID-19 at any given time or had contracted the disease in the past and therefore had natural immunity.

286)    Plaintiffs suffered through "outing" experiences such as masking, testing, and forced absence from office-wide work gatherings.

FIRST AMENDED COMPLAINT
78
Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

287) The testing itself was physically invasive and uncomfortable, while at the same time scientifically unjustified.

288) They were forced to use a different, invasive, and at the same time less personal procedure for acquiring religious accommodation, and many received no accommodation at all.

289) Many lost opportunities for travel, temporary assignments, and opportunities at career advancement because of their religious beliefs.

290) Defendants fostered a pervasive environment of religious discrimination and harassment in violation of Title VII of the Civil Rights Act.

## COUNT IV
## TITLE VII RELIGIOUS DISCRIMINATION
## RETALIATORY HARASSMENT

291) Even if Plaintiffs' case is deemed not sufficiently severe or pervasive to trigger a harassment claim under Title VII, it is sufficient to raise a claim of Retaliatory Harassment under Title VII.

292) As explained in the EEO's decision stemming from the Navy's Puget Sound Naval Shipyard and Intermediate Maintenance Facility in Yokosuka, Japan:

> The threshold for establishing retaliatory harassment is different than for discriminatory hostile work environment. Retaliatory harassing conduct can be challenged under the *Burlington Northern* standard even if it is not severe or pervasive enough to alter the terms and conditions of employment." EEOC Enforcement Guidance on Retaliation and Related Issues, No. 915.004, Sect. II.B, ex. 17. (Aug 25, 2016) (*citing Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

*Merlin W., Complainant v. Carlos Del Toro, Secretary of the Navy*, Appeal No. 20220002711, Agency Number 19-4523A-00428, Sept 22, 2021 (pending final publication).

293) Although petty slights and trivial annoyances are not actionable, adverse actions such as reprimands, threats, negative evaluations, and harassment are actionable. *Id* at 8.

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

294) To prevail in a retaliatory harassment claim, a complainant must show that a reasonable person would have found the challenged action materially adverse, i.e., an action that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination in the future. *Id.* (citing *Burlington Northern*) at 53.

295) Plaintiffs belong to a statutorily protected class based on their protected EEO activity of requesting a religious accommodation and were subjected to unwelcome verbal and written conduct.

296) Plaintiffs were subjected to retaliatory harassment when Defendants threatened them with disciplinary action, placement on AWOL status and removal from Federal service. Defendants forced many of them to resign, limited their ability to perform their jobs, required a separate, onerous process for filing an accommodation and myriad of other adverse actions.

297) Plaintiffs were also subject to retaliatory harassment when they were threatened with disciplinary action, including termination if they engaged in any collective protest against the vaccine mandate.

298) These actions individually and in totality are materially adverse and would deter a reasonable person from engaging in protected EEO activity.

## COUNT V
## TITLE VII RELIGIOUS DISCRIMINATION
## CONSTRUCTIVE DISCHARGE

299) Numerous Plaintiffs were forced to leave their jobs and/or retire early because of the intolerable coercion and pressure to get the vaccine rampant in the Command.

300) Under the constructive discharge doctrine, an employee's "reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pa. State Police v. Suders*, 542 U.S. 129 at 141, (2004).

FIRST AMENDED COMPLAINT

80

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

301) The "general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employer is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is liable for any illegal conduct involved therein as if it had formally discharged the aggrieved person." *Young v. Southwestern Sav and Loan Asso*. 509 F.2d 140 at 144 (5th Cir. 1975).

302) "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pa. State Police,* 542 U.S. at 141.

303) In this case, the answer is yes. Plaintiffs were subjected to continuous and heavy-handed threats of discipline, AWOL status, or termination because of their religious beliefs. For those who resigned, it was too much to bear. They felt pressure, coercion, ridicule, and consistent and pervasive fear of losing their jobs. To gain some sense of control over their personal and professional situations, to protect their faithfulness to their religious beliefs, and to protect their livelihoods and their futures, Plaintiffs resigned their employment with Defendants to avoid the intolerable working environment the Command.

## COUNT VI
## RELIGIOUS FREEDOM RESTORATION ACT

304) The Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C.S. § 2000bb et seq., sets the standards binding every department of the United States to recognize and accommodate sincerely held religious beliefs, including in the military context. *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, (5th Cir., 2022).

305) As the Supreme Court has noted, RFRA affords even "greater protection for religious exercise than is available under the First Amendment[]" and provides that the

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

"Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Navy Seals*, 27 F.4th 347-358, 350, *citing Holt v. Hobbs*, 574 U.S. 352, 357, 135 S. Ct. 853, 859-60, 190 L. Ed. 2d 747 (2015); 42 U.S.C. § 2000bb-1.

306)    "A government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Id.* at 350, *citing Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) (involving RLUIPA).

307)    Here Defendants have substantially burdened the exercise of religion by forcing religious believers to either take the vaccine or be subject to a true parade of horribles, including removal from service.

308)    In burdening Plaintiffs' religious beliefs, Defendants did not use the "least restrictive means" possible as other approaches were available and indeed previously utilized (i.e., remote work, the safety "Triad", etc.). Nor did Defendants burden Plaintiffs' beliefs in pursuit of legitimate government ends, as vaccination did not prevent the transmission of the disease. Rather, they simply presented Plaintiffs with two options: violate their religious convictions or risk their livelihoods and careers.

309)    At the 5th Circuit found in *Navy Seals v. Biden*, the vaccine would "directly burden [Plaintiffs'] respective faiths by forcing them to inject an unremovable substance at odds with their most profound convictions. This injury would outlast their military service, making the decision whether to acquiesce far more difficult than just choosing between 'their job(s) and their

FIRST AMENDED COMPLAINT

82

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

jab(s)'. *Navy Seals*, 27 F4th at 350 (*quoting, BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

310)    The "vaccine requirements principally compete against [Plaintiffs] faiths and secondarily against their livelihoods. . . These circumstances impose a substantial burden on Plaintiffs". *Id.* at 350. The Navy's actions in this case unjustly burden Plaintiffs' religious beliefs just as they did in *Navy Seals*.

311)    Notably, the Supreme Court has found that RFRA allows plaintiffs to recover money damages against federal officials in their individual capacities. *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).

**COUNT VII**
**1ST AMENDMENT TO THE UNITED STATES CONSTITUTION**
**FREE EXERCISE CLAUSE**

312)    The Free Exercise Clause of the First Amendment of the United States Constitution ("Free Exercise Clause") applies when government action "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) (citations omitted).

313)    Under the Free Exercise Clause, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, … it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533 (citations omitted). "Official action that targets religious conduct for distinctive treatment cannot be shielded by … facial neutrality," as "[t]he Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Id.* at 534.

FIRST AMENDED COMPLAINT
83
Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

314)     Here, the Defendants' vaccine mandate and the medical examinations and inquiries associated therewith violated the Free Exercise Clause. The Federal Government, including Defendants, purposefully enacted its vaccine mandate to infringe upon or restrict the practices of its employees who objected to receiving the vaccine because of their religious beliefs.

315)     The repeated statements by Captain Mosman and Admiral Galinis pressuring and coercing employees to take the vaccine and the sham process by which employees could request those exemptions shows discriminatory intent. Defendants also exhibited discriminatory intent in adopting the posture of the federal government, which is to promote vaccination, no matter the expense to individual rights.

316)     Indeed, it was public knowledge as early as August 2021, that while the vaccine helped reduce deaths and the severity of symptoms, it did not prevent the spread of COVID-19. To the extent that the Defendants may have considered the "public health risk" posed by employees with religious objections to the vaccine, the Defendants were not entitled, in the face of religious opposition to the vaccines, to override an individual's choice to risk the possibility of worse symptoms, death, and hospitalization for themselves. This is especially true since there was no scientific evidence that the vaccine prevented the spread of the disease or the severity of the disease in others.

317)     Defendants' coercive vaccine requirements have seriously infringed on Plaintiff's First Amendment freedoms. *Navy Seals,* 27 F4th at 353.

**COUNT VIII**
**FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**DUE PROCESS CLAUSE**

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

318) The Supreme Court has recognized that "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions." *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, (1990).

319) The Court rooted this principle in the Due Process clause of the Fourteenth and the Due Process Clause of the Fifth Amendment for Federal employees.

320) This principle is what makes Defendants' conduct in this episode unlawful. Defendants used economic power to secure "consent" to an unwanted medical treatment. They sought an economic *quid pro quo*, through coercion and power. This is the same type of "consent" that harassers seek from the harassed in the sex discrimination context and should not be permitted by Defendants.

## **PRAYER FOR RELIEF**

321) Plaintiffs respectfully request that the Court:

(a) Compensatory damages for monetary and non-monetary loss;

(b) Exemplary and punitive damages;

(c) Prejudgment interest;

(d) Reasonable attorney's fees; and,

(e) Such other relief as law or equity may pertain.

## **JURY TRIAL**

322) A jury trial is requested in this matter.

Dated: June 20, 2023                    Respectfully Submitted,


                                        /s/ E. Scott Lloyd
                                        E. Scott Lloyd

FIRST AMENDED COMPLAINT

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110

Virginia Bar # 76989
Lloyd · Lemmon, PLLC
15 Chester Street
Front Royal, VA 22630
(540) 823-1110
(540) 631-4081
scott@lloydlemmon.com
Lead Attorney
*admitted pro hac vice*

**SILENT MAJORITY FOUNDATION**

*/s/Simon Peter Serrano*
Simon Peter Serrano, WSBA No. 54769
5238 Outlet Dr.
Pasco, WA 99301
(530) 906-9666
pete@silentmajorityfoundation.org

*/s/Karen L. Osborne*
Karen Osborne, WSBA No. 51433
KOSBORNE LAW, LLC
9721 NE Livingston Mountain Court
Camas, WA 98607
(360) 975-3813
karen@smfjb.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I will cause the foregoing to be served upon the Department on June 22, 2023.

/s/ E. Scott Lloyd

SCOTT LLOYD

FIRST AMENDED COMPLAINT

86

Lloyd Law Group
15 Chester St.
Front Royal, VA
22630
(540)823-1110