1

2

3

4

5                     UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
6                              AT TACOMA

7

8   FEDS FOR FREEDOM, ELIZABETH          CASE NO. 3:23-cv-05490 DGE-RJB
    SOLIDAY, et. al.,
9                                         consolidated with
                       Plaintiffs,
                                          CASE NO. 3:23-cv-05961- DGE
10            v.

11  LLOYD J AUSTIN, III, Secretary of
    Defense, United States Department of
12  Defense, DEPARTMENT OF DEFENSE,      ORDER ON MOTIONS TO
    UNITED STATES NAVY, VICE             DISMISS
13  ADMIRAL GILBERT R CISNEROS, JR.,
    Under Secretary of Defense, United States
14  Department of Defense, CARLOS DEL
    TORO, Commander, Secretary of the Navy,
15  VICE ADMIRAL WILLIAM J. GALINIS,
    Commander, Naval Sea Systems
16  Command, CAPTAIN JAMES MOSMAN,
    Commander, Puget Sound Naval Shipyard
17  and Intermediate Maintenance Facility,

18                     Defendants.

19  JEFFRY LEBRET,

20                     Plaintiff,
              v.
21
    LLOYD J AUSTIN, III, Secretary of
22  Defense, VICE ADMIRAL GILBERT R.
    CISNEROS, Jr., Department of Defense
23  Under Secretary of Defense for Personnel
    and Readiness, THE DEPARTMENT OF
24  DEFENSE, THE UNITED STATES
    NAVY, VICE ADMIRAL WILLIAM J.

CONSOLIDATED WITH - 1

1  GALINIS, Commander Naval Sea
2  command Systems, NAVAL SEA
   COMMAND SYSTEMS,
3
                              Defendants.
4
5       This matter comes before the Court on the "Individual Federal Defendants' Fed. R. Civ.
6  P. 12(b) Motion to Dismiss Plaintiffs' Individual-Capacity Claims" (Dkt. 77) brought by
7  Defendants U.S. Secretary of the Department of Defense Lloyd J. Austin, III, Vice Admiral
8  Gilbert R. Cisneros, Jr., U.S. Secretary of the Navy Carlos Del Toro, Vice Admiral William J.
9  Galinis, and Captain James Mosman (collectively "Individual Defendants") and "Official
10 Capacity Defendants' Motion to Dismiss" (Dkt. 78) brought by the United States Department of
11 Defense, United States Navy, Naval Sea Systems Command (collectively "DoD"), and the
12 Individual Defendants.  The Court has considered the pleadings filed regarding the motions and
13 the remaining file.  It is fully advised.
14      These consolidated cases arise from health and safety measures, including a vaccine
15 mandate with medical and religious exemptions, that were implemented to combat the COVID-
16 19 pandemic.  Dkt. 72 and *LeBret v. Austin,* U.S. Dist. Court for the West. Dist. of Washington
17 case 3:23-cv-5961, Dkt. 1 ("*LeBret,* 23-5961 Dkt. 1").  A brief explanation of the procedural
18 posture of the case and clarification of the parties and claims is helpful.
19      The Plaintiffs are Feds for Freedom (formerly Feds for Medical Freedom) and 61
20 individually named people who are/were DoD civilian employees, who purport to have held
21 religious beliefs that prevented them from receiving the COVID-19 vaccine.  Dkt. 72 and *LeBret*
22 23-5961 Dkt. 1.  While the cases were filed as putative class actions, no class has been certified.
23 Feds for Freedom, Elizabeth Soliday, and fifty-nine DoD employees filed this case (*Feds for*
24 *Freedom, et. al. v. Austin, et. al.,* U.S. Dist. Court for the West. Dist. of Washington case 23-

5490) on May 25, 2023.  Dkt. 1.  Plaintiff Jeffry LeBret separately filed a putative class action on October 24, 2023.  *LeBret,* 23-5961 Dkt. 1.  These two cases were consolidated on February 12, 2024 to proceed under this case (23-5490). Dkt. 76.  The Plaintiffs, then, for both consolidated cases, are Feds for Freedom, Mrs. Soliday, Mr. LeBret, and the other 59 named Plaintiffs.  This order will address the allegations and claims in both cases against all defendants.

In their first claim, the Plaintiffs maintain that the Individual Defendants (Austin, Cisneros, Del Toro, Galinis, and Mosman), in their individual capacities, violated the DoD employee Plaintiffs' rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb, *et. seq.* Dkt. 72 and *LeBret* 23-5961 Dkt. 1.

In their second claim (which contains three subclaims), the Plaintiffs assert that DoD and Defendant Austin, in his official capacity, violated the DoD employee Plaintiffs' rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq. Id.*  Because official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), the official capacity Title VII claims against Defendant Austin duplicate the Title VII claims against DoD.  The Title VII claims asserted against Defendant Austin, in his official capacity, are duplicative.  To avoid redundancy, those claims should be dismissed.  Accordingly, the Plaintiffs' Title VII claims will be construed as against DoD.

The Individual Defendants now move to dismiss the RFRA claim, which is asserted against them in their individual capacities only.  Dkt. 77.  DoD moves to dismiss the Title VII claims asserted against it.  Dkts. 78.  For the reasons provided below, their motions should be granted, and all claims against all Defendants should be dismissed with prejudice and without leave to amend.

## I.   BACKGROUND FACTS, ADMINISTRATIVE ACTIONS AND PROCEDURAL HISTORY

### A.  BACKGROUND FACTS

The background facts are taken from the Second Amended Complaint in this case (Dkt. 72) and the Complaint in *LeBret* (which will be designated as "*LeBret,* 23-5961 Dkt. 1"). Additionally, some general background information will be taken from court decisions.

COVID–19 is a "highly contagious, dangerous, and . . . deadly disease." *Biden v. Missouri*, 595 U.S. 87, 93 (2022).  In response to the COVID-19 pandemic, on September 9, 2021, President Biden issued Executive Order 14043, which instructed federal agencies to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of [their] federal employees, with exceptions only as required by law."  86 Fed. Reg. 50,990 (Sept. 9, 2021); Dkt. 72 at 10 and *LeBret,* 23-5961 Dkt. 1 at 8. (This mandate was rescinded effective May 12, 2023.  88 Fed. Reg. 30891 (May 9, 2023)).

The Plaintiffs contend that at the end of September of 2021, Defendant Captain Mosman, Commander of Puget Sound Naval Shipyard ("PSNS"), emailed civilian employees encouraging them to get a COVID-19 vaccine or receive an exemption or face possible discipline to include dismissal.  Dkt. 1 at 11-12.  (Some of the named Plaintiffs worked at PSNS and at least one of the named Plaintiffs worked at the Naval Undersea Warfare Center Division Keyport ("Keyport").  Dkt. 72 and *LeBret,* 23-5961 Dkt. 1.  Located in Washington State, PSNS and Keyport are subordinate commands to Naval Sea Systems Command ("NAVSEA").  *Id*.

The DoD issued its COVID-19 vaccine implementing policy for civilian employees on October 1, 2021.  *LeBret,* 23-5961 Dkt. 1 at 10.  Under the DoD policy, "[a]ll DoD civilian employees must be fully vaccinated by November 22, 2021, subject to exemptions as required by law."  *Id.* It further provided that additional guidance on the exemptions would follow.  *Id.*

1       According to the Plaintiffs, on October 14, 2021, Defendant Vice Admiral Galinis, in his

2  capacity as NAVSEA Commander, sent an email to the NAVSEA employees, encouraging

3  vaccination and stating that unvaccinated employees "will not work for the U.S. Navy."  Dkt. 72

4  at 12; *LeBret,* 23-5961 Dkt. 1 at 13.  Later that evening, Defendant Captain Mosman, in his

5  capacity as the PSNS Commander, sent an email to all PSNS employees "reassur[ing] employees

6  that an accommodations process would be available."  Dkt. 72 at 13.

7       Defendant Vice Admiral Cisneros, the Under Secretary of Defense for Personnel and

8  Readiness, published additional DoD COVID-19 vaccination policy guidance on October 18,

9  2021, with vaccine attestation requirements and enforcement mechanisms (including disciplinary

10  actions up to dismissal unless a medical or religious exemption was issued).  *LeBret,* 23-5961

11  Dkt. 1 at 11.  Unvaccinated civilian employees, including those requesting religious exemptions,

12  were subject to testing, masking, social distancing, and restricted work-related travel unless the

13  assignment was "mission-critical."  *Id.* at 12.  Under this guidance, requests for medical and

14  religious exemptions were to be granted "only where legally required."  *Id.* The October 18,

15  2021 guidance provided that more guidance would be coming on those exemptions and, at that

16  time, leaders were to "take no action on any exemption requests from DoD civilian employees."

17  *Id.*  The Plaintiffs stated that they felt that this guidance "set the stage" for religious

18  discrimination, harassment, and intentional humiliation for those professing religious objections

19  to the COVID-19 vaccine.  *Id.* at 13.

20       The Plaintiffs contend that on October 22, 2021, Defendant Captain Mosman emailed the

21  PSNS employees, acknowledging that they still did not have guidance on the processing of

22  exemption requests, but reminded employees they still needed to apply for an exemption or be

23  vaccinated.  Dkt. 72 at 15.  According to the Plaintiffs, the process to apply for a religious

24  exemption was confusing.  *LeBret,* 23-5961 Dkt. 1 at 16.  They point out that Captain Mosman

1    acknowledged that it was confusing in an October 29, 2021 email that provided that they "still

2    [didn't] know how these requests [would] be adjudicated or at what level that would take place."

3    Dkt. 72 at 16.  DoD did not announce the official process to apply for an exemption until

4    December 20, 2021. *LeBret,* 23-5961 Dkt. 1 at 16. (The deadline to either apply for an

5    exemption or be fully vaccinated was November 22, 2021 under DoD's policy.).

6        One of the named Plaintiffs here, Mr. LeBret, alleges in his Complaint that he applied for

7    a vaccine exemption on November 2, 2021 based on his religious beliefs.  *LeBret,* 23-5961 Dkt.

8    1 at 17.  He alleges that he believes in not putting "foreign substances" in his body, that the

9    "presence of neurotoxins, hazardous substances, attenuated viruses, animal cells, foreign DNA,

10    albumin from human blood, carcinogens and chemical wastes injected into [his] body, is in strict

11    violation of [the] imperative to treat our bodies as Holy temples of the very Spirit of God." *Id.*

12    He also opposed receiving the vaccine because he believed that they were developed/tested using

13    aborted fetal cell lines.  *Id.*  Mr. LeBret asserted in his Complaint that his religious belief, of not

14    engaging in "unnecessary medical procedures containing the potential presence of neurotoxins

15    and hazardous substances" to avoid contaminating his body, conflicted with COVID-19 testing

16    requirements as well.  *Id.*  He does not allege that he sought an exemption from testing

17    requirements, however.

18        Plaintiff Elizabeth Soliday alleges that on November 8, 2021, she submitted a vaccine

19    exemption based on her religious belief that God "moved her to avoid vaccines after her son

20    became severely disabled after suffering vaccine injuries."  Dkt. 72 at 7.  She also made a request

21    for a COVID-19 testing exemption based on her religious beliefs.  *Id.* at 18.  The request to be

22    exempt from testing requirements was granted.  *Id.*

23        The other 59 named Plaintiffs maintain that they, and other putative members of the

24    class, are individuals who are or were employed by NAVSEA and filed religious accommodation

1    requests to be exempt from the COVID-19 vaccine.  Dkt. 72 at 7; *LeBret,* 23-5961 Dkt. 1.  The

2    Second Amended Complaint in this case does not provide any further facts about the other 59

3    Plaintiffs who are individually named (aside from the facts related to Plaintiff Soliday).  Dkt. 72.

4    The Complaint filed in *LeBret* does not provide specific facts related to an identified person

5    other than Mr. LeBret.  *LeBret,* 23-5961 Dkt. 1.

6          A few months after Plaintiffs Soliday and LeBret filed for their exemptions, on January

7    21, 2022, the U.S. District Court for the Southern Dist. of Texas issued a nationwide preliminary

8    injunction prohibiting the Government from "implementing or enforcing Executive Order

9    14043" pending resolution of the case on the merits.  *Feds for Med. Freedom v. Biden*, 581 F.

10   Supp. 3d 826, 836 (S.D. Tex. 2022), *vacated and remanded*, 30 F.4th 503 (5th Cir. 2022), *reh'g*

11   *en banc granted, opinion vacated*, 37 F.4th 1093 (5th Cir. 2022), *aff'd on reh'g en banc*, 63 F.4th

12   366 (5th Cir. 2023), *cert. granted, judgment vacated*, 144 S. Ct. 480 (2023).

13         The Plaintiffs in this case (including Feds for Freedom who brought the Texas case under

14   the name "Feds for Medical Freedom") complain that after the Texas court issued its decision,

15   the Defendants did not make a decision on their requests for religious exemptions from the

16   vaccine requirements.  Dkt. 72 at 7; *LeBret,* 23-5961 Dkt. 1.  Instead, they contend that the

17   Defendants waited until the President rescinded the vaccine mandate, effective May 12, 2023,

18   and "canceled" the requests.  *Id.*  They maintain that the Defendants harmed them by making

19   them feel segregated, harassed, coerced, and shamed.  *Id.*

20   **B.  PLAINTIFFS SOLIDAY AND LEBRET'S ADMINISTRATIVE ACTIONS**

21         Plaintiff Soliday alleges that she filed an Equal Employment Opportunity ("EEO")

22   complaint on October 28, 2021.  Dkt. 72 at 26.  Her claims were denied on February 24, 2023.

23   *Id.*

24

ORDER ON MOTIONS TO DISMISS - 7

Plaintiff LeBret contacted an EEO counselor on December 13, 2024 and filed an EEO complaint with the Navy on January 27, 2022, which was referred to the Equal Employment Opportunity Commission ("EEOC") on February 22, 2023.  *LeBret,* 23-5961 Dkt. 1 at 27.  On June 16, 2023, the EEOC dismissed Mr. LeBret's complaint, re-referred it to the Navy and the Navy dismissed Mr. LeBret's complaint for failure to state a claim on July 26, 2023.  *Id.* at 28.

## C.  PROCEDURAL HISTORY OF THESE CASES, PENDING MOTIONS, AND ORGANIZATION OF THE OPINION

Feds for Freedom, Plaintiff Soliday, and 59 other named Plaintiffs filed this proposed class action on May 25, 2023.  Dkt. 1.  Plaintiff LeBret filed his proposed class action on October 24, 2023.  *LeBret,* 23-5961 Dkt. 1.  No class has been certified.  After the Plaintiffs filed their Complaint (Dkt. 1) and filed an Amended Complaint (Dkt. 11) as of right, the Second Amended Complaint was filed in this case (Dkt. 72) on January 9, 2024.  These cases were consolidated on Feb. 12, 2024.  Dkt. 76.  The operative complaints are the Second Amended Complaint (Dkt. 72) and the *LeBret* complaint (*LeBret,* 23-5961 Dkt. 1).

The Plaintiffs bring a claim for violation of their rights under RFRA against the Individual Defendants in their individual capacities only.  Dkt. 72 at 29-42; *LeBret,* 23-5961 Dkt. 1 at 34-45.

After conceding the dismissal of some claims,[1] the Plaintiffs assert Title VII "religious discrimination" claims for: (a) failure to accommodate, (b) harassment/hostile work environment

---

[1] In their response to the official capacity Defendants' motion to dismiss the Plaintiffs indicate that they "will not pursue their disparate treatment or retaliatory harassment claims and do not opposed their dismissal."  Dkt. 82 at 11.  Accordingly, the Plaintiff's disparate treatment and retaliatory harassment claims should be dismissed with prejudice and without further analysis.

The Plaintiffs also agree to dismiss the official capacity Title VII claims against Cisneros, Del Toro, Galinis and Mosman.  *Id.* at 5.  As stated above on page 2 of this order, because official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), the official capacity Title VII claims against Defendant Austin duplicate the Title VII claims against DoD.  To avoid redundancy, the Title VII claims asserted against Defendant Austin, in his official capacity, should be dismissed.

1  and (c) disparate impact against DoD.  Dkt. 72 at 29-42 (asserting all three subclaims); *LeBret,*
2  23-5961 Dkt. 1 at 34-45 (asserting only subclaims (a) and (b)).

3       The Plaintiffs seek damages, attorneys' fees, and "[s]uch other relief as law or equity may
4  pertain."  Dkt. 72 and *LeBret,* 23-5961 Dkt. 1.

5       The Individual Defendants now move to dismiss all claims asserted against them in their
6  individual capacity.  Dkt. 77.  They contend that sovereign immunity bars Plaintiffs' RFRA
7  claim under Fed. R. Civ. P. 12(b)(1).  *Id.*  They argue that the Court lacks personal jurisdiction
8  over them in their individual capacities pursuant to Fed. R. Civ. P. 12(b)(2).  *Id.*  They assert that
9  they are entitled to qualified immunity pursuant to Fed. R. Civ. P. 12(b)(6) and so the Plaintiffs
10 do not state a claim for relief on their RFRA claim.  *Id.*

11      The Defendants also move to dismiss all claims against DoD.  Dkt. 78.  They argue that
12 the Court should dismiss Plaintiffs Feds for Freedom for lack of standing under Fed. R. Civ. P.
13 12(b)(1).  *Id.*  They move for dismissal of the Plaintiffs' Title VII claims, asserting that they
14 failed to plead claims which would entitle them to relief under Fed. R. Civ. P. 12(b)(6). *Id.*  The
15 Defendants also move to dismiss Plaintiff LeBret's Title VII claims as untimely and
16 unexhausted.  *Id.*

17      This opinion will first provide the standards on motions to dismiss under Fed. R. Civ. P.
18 12(b).  It will then address the jurisdictional issues raised in both motions:  whether the Court has
19 subject matter jurisdiction over the Plaintiffs' RFRA claims, whether the Court has personal
20 jurisdiction over the Individual Defendants, and whether Plaintiff Feds for Freedom has standing
21 to sue.  This opinion will then turn to whether the Plaintiffs' RFRA and Title VII claims should
22 be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The Defendants' motions
23 should be granted; accordingly the Court need not address all other arguments that the
24 Defendants raise for dismissal.

1

## II.   DISCUSSION

2

### A.  STANDARDS ON MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), 12(b)(2) AND 12(b)(6)

3

4      A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual

5  allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the

6  Constitution, laws, or treaties of the United States, or does not fall within one of the other

7  enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or

8  controversy within the meaning of the Constitution; or (3) is not one described by any

9  jurisdictional statute.  *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v.*

10  *Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal

11  question jurisdiction) and 1346 (United States as a defendant).  When considering a motion to

12  dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings but may

13  review any evidence to resolve factual disputes concerning the existence of jurisdiction.

14  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052

15  (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).  A federal court

16  is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise.  *Kokkonen v.*

17  *Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated*

18  *Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  Therefore, plaintiff bears the burden of proving the

19  existence of subject matter jurisdiction.  *Stock West* at 1225.

20      When a defendant moves to dismiss a complaint for lack of personal jurisdiction pursuant

21  to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden to demonstrate that jurisdiction is

22  appropriate. *Will Co. Ltd. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022). When the motion is based on

23  written materials, as is the case here, the court only examines whether the plaintiff's pleadings

24  and affidavits make a prima facie showing of personal jurisdiction.  *Id.*

1    Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a

2    cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

3    *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations

4    are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*,

5    717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

6    does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

7    entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

8    elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55

9    (2007) (*internal citations omitted*).  "Factual allegations must be enough to raise a right to relief

10   above the speculative level, on the assumption that all the allegations in the complaint are true

11   (even if doubtful in fact)."  *Id*. at 555.  The complaint must allege "enough facts to state a claim

12   to relief that is plausible on its face."  *Id*. at 547.

13   **B.   ISSUES RAISED REGARDING JURISDICTION:  SUBJECT MATTER**
     **JURISDICTION OVER THE RFRA CLAIM, PERSONAL JURISDICTION**
14   **OVER THE INDIVIDUAL DEFENDANTS, AND FEDS FOR FREEDOM'S**
     **STANDING TO BRING SUIT**
15
         1.   Subject Matter Jurisdiction Over RFRA Claim
16
17       The Plaintiffs bring the RFRA claim against the Individual Defendants in their individual

18   capacities only.  The Individual Defendants move for dismissal of the RFRA claim, arguing that

19   sovereign immunity bars the claim.  Dkt. 77.  The Individual Defendants contend that the RFRA

20   claim is really a prohibited damages claim against the federal government.  *Id.* (RFRA damages

21   claims against individual defendants, in their individual capacities, could be available under

22   different facts.  *Tanzin v. Tanvir,* 592 U.S. 43 (2020).  RFRA damages claims against the federal

23   government or individual defendants, in their official capacities, are not permitted based on

24

1    sovereign immunity.  *Donovan v. Vance,* 70 F.4th 1167, 1172 (9th Cir. 2023)).  The Plaintiffs

2    contend that sovereign immunity does not bar their RFRA claims.  Dkt. 83.

3          To determine whether sovereign immunity bars a lawsuit against a federal employee,

4    courts look at whether the sovereign is the "real party in interest."  *Lewis v. Clarke*, 581 U.S.

5    155, 161–62 (2017).  "In making this assessment, courts may not simply rely on the

6    characterization of the parties in the complaint, but rather must determine in the first instance

7    whether the remedy sought is truly against the sovereign."  *Id.* at 162.  "The general rule is that a

8    suit is against the sovereign if the judgment sought would expend itself on the public treasury or

9    domain, or interfere with the public administration, or if the effect of the judgment would be to

10   restrain the Government from acting, or to compel it to act."  *Pennhurst State Sch. & Hosp. v.*

11   *Halderman,* 465 U.S. 89, 101 n.11 (1963).

12         Monetary damages awarded against the Individual Defendants, in their individual

13   capacities, would "expend itself on the public treasury or domain."  *Pennhurst* at 101 n. 11.  The

14   Plaintiffs' complaints center on DoD's implementation of Executive Order 14043 and its

15   promulgation of policies and guidance.  There are no allegations about actions taken by Sec.

16   Austin or Sec. Del Toro.  The allegations related to Vice Admiral Cisneros was that he created

17   and issued DoD's guidance on implementing Executive Order 14043. The allegations regarding

18   Vice Admiral Galinis and Captain Mosman relate only to their passing information about

19   Executive Order 14043, DoD's policies, and DoD's guidance on Executive Order 14043's

20   implementation.  If a monetary judgment is entered against the Individual Defendants for their

21   crafting, sharing, and following guidance to comply with Executive Order 14043, the

22   government would "have no choice but to indemnify Defendants; otherwise, the risk of personal

23   liability for implementing . . . policy would guarantee no rational official would assume" the

24

1   Individual Defendants' official positions.  *Henley v. Simpson*, 527 Fed. Appx. 303, 307 (5th Cir.

2   2013).

3           Further, if monetary damages were awarded against the Individual Defendants, in their

4   individual capacities, while Executive Order 14043 was effective, DoD would have been forced

5   to revise its implementing guidance.  A finding that the Individual Defendants violated the

6   Plaintiffs' religious rights would be predicated on a finding that Executive Order 14043 and

7   DoD's implementing policies and guidance were improper.  The effect of a monetary damages

8   judgment would be that it would compel the Government to act.  *Pennhurst* at 101 n.11.

9           The United States DoD, then, is the real party in interest and sovereign immunity applies

10  to Plaintiffs' RFRA claims against the Individual Defendants in their individual capacities.  *See*

11  *Feds for Medical Freedom v. Blinken,* U.S. Dist. Court for the Eastern Dist. of Virginia case

12  number 23-0266 PTG Dkts. 71 and 72; oral opinion and order found in the record in this case at

13  77-1 and 77-2 (dismissing, as barred by sovereign immunity, RFRA claims asserted against the

14  Secretary and two Director Generals of the United States Department of State, in their individual

15  capacities, based on agency policies and guidance they promulgated for Executive Order 14043).

16  This Court does not have jurisdiction over Plaintiffs' RFRA claims.

17          2.   Personal Jurisdiction over Claims Against the Individual Defendants in their
                 Individual Capacities

18          The Individual Defendants contend that this Court does not have personal jurisdiction

19  over them pursuant to Fed. R. Civ. P. 12(b)(2).  Dkt. 77.  They point out that neither of the

20  complaints in these cases allege that any of the Individual Defendants (except Captain Mosman)

21  have ever resided in Washington State.  *Id.*  There is no allegation that any of the Individual

22  Defendants lived in Washington State when they were served or that any of the Individual

23  Defendants have had sufficient contacts with the state of Washington to subject them to this

1   Court's jurisdiction (such as committing acts relevant to the alleged torts in Washington).  *Id.*

2   The Individual Defendants point out that the federal statutes the that Plaintiffs invoke do not

3   authorize nationwide service of process.  *Id.*

4           Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

5   plaintiff bears the burden of demonstrating that personal jurisdiction is appropriate.

6   *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot

7   simply rest on the bare allegations of his complaint, but rather is obligated to come forward with

8   facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc.*

9   *v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977).

10          Where, as here, no applicable federal statute addresses personal jurisdiction, a court's

11  personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court

12  sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th

13  Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the

14  broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard*

15  *Management Corp.,* 95 Wn. App. 462, 465 (1999). Because Washington's long-arm

16  jurisdictional statute is coextensive with federal due process requirements, the jurisdictional

17  analysis under state law and federal due process are the same. *Schwarzenegger* at 800–01.

18          To exercise personal jurisdiction over a nonresident defendant, that defendant must have

19  at least "minimum contacts" with the relevant forum state such that exercising jurisdiction "does

20  not offend traditional notions of fair play and substantial justice." *Schwarzenegger* at 801

21  (*quoting International Shoe v. Washington*, 326 U.S. 310, 316 (1945)). In determining whether a

22  defendant has minimum contacts, courts focus on the relationship among the defendant, the

23  forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977).

24

ORDER ON MOTIONS TO DISMISS - 14

1    Personal jurisdiction exists in two forms: general and specific. *Dole Food Co. v. Watts,*

2    303 F.3d 1104, 1111 (9th Cir. 2002). To establish general jurisdiction, the plaintiff must show

3    that the defendant's affiliations with the forum state are so continuous and systematic as to

4    render them essentially at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 122

5    (2014).  To establish specific jurisdiction, the plaintiff must show that: (1) defendant

6    purposefully availed themselves of the privilege of conducting activities in Washington, thereby

7    invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendant's

8    Washington-related activities; and (3) the exercise of jurisdiction would be reasonable. *Easter v.*

9    *American West Financial,* 381 F.3d 948, 960–61 (9th Cir. 2004); *Bancroft & Masters, Inc. v.*

10   *Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

11   This Court does not have general jurisdiction over the Individual Defendants.  The

12   Plaintiffs have failed to demonstrate that the Individual Defendants' affiliations with Washington

13   State are so continuous and systematic as to render them at home in Washington.  *Daimler* at

14   122.  None of the Individual Defendants currently live in Washington State and all were served

15   outside the state.  Dkts. 16-51.  Accordingly, the Plaintiffs must demonstrate that the Court has

16   specific jurisdiction over the Individual Defendants to exercise personal jurisdiction over them.

17   The Plaintiffs have not shown that the Court has specific personal jurisdiction over the

18   Individual Defendants.  They have not filed affidavits or other materials to support any of the

19   listed requirements to support their assertion that the Court has specific personal jurisdiction over

20   the Individual Defendants.  Their claims of specific personal jurisdiction rests on allegations that

21   the Individual Defendants helped implement the nationwide vaccine mandate for all federal

22   employees found in Executive Order 14043.

23   In opposition to this portion of the motion to dismiss, the Plaintiffs argue that RFRA is a

24   "super statute" and should be interpreted broadly enough to reach officials in their individual

1  capacities.  Dkt. 83 at 6.  The Plaintiffs fail to point to any authority that supports the argument

2  that the RFRA authorizes nationwide personal jurisdiction, and the undersigned can find none.

3  Other courts that have considered the question have concluded that RFRA does not authorize

4  nationwide service of process.  *Feds for Med. Freedom v. Garland*, 4:23-CV-1817, 2024 WL

5  1859958, at *6 (S.D. Tex. Apr. 29, 2024)(*citing Nichols v. Fed. Bureau of Prisons*, No. 09-CV-

6  00558-CMA-CBS, 2010 WL 3239291, at *4–*5, *7 (D. Colo. June 22, 2010)(dismissing RFRA

7  claim for lack of personal jurisdiction, after determining that RFRA did not authorize nationwide

8  service of process and conducting minimum contacts test)).

9       The Plaintiffs have failed to carry their burden to show that this Court has personal

10  jurisdiction over the Individual Defendants in their individual capacities.  Therefore, the

11  Individual Defendants' Motion to Dismiss claims asserted against them in their individual

12  capacities (Dkt. 77) should be granted.

13       3.  *Feds for Freedom's* Standing to Bring Suit

14       Article III of the U.S. Constitution "limits federal judicial power to 'Cases' and

15  'Controversies.'"  *Van Patten v. Vertical Fitness GRP., LLC* 847 F.3d 1037, 1041 (9th Cir.

16  2017).  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of

17  Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Navajo Nation v. Dep't of the*

18  *Interior*, 876 F.3d 1144, 1160 (9th Cir. 2017).  "At an irreducible constitutional minimum,

19  standing requires the party asserting the existence of federal court jurisdiction to establish three

20  elements: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent;

21  (2) causation; and (3) a likelihood that a favorable decision will redress the injury."  *Wolfson v.*

22  *Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010)(*citing Lujan,* at 560-61).  An organization like

23  Feds for Freedom can sue based on injuries to itself or to its members. *Am. Unites for Kids v.*

24  *Rousseau,* 985 F.3d 1075, 1096 (9th Cir. 2021)(*internal citation omitted*).

1    An organization suing on its own behalf may satisfy the first requirement, "injury in

2    fact," if it can show: (a) "frustration of its organizational mission" and (b) "diversion of its

3    resources to combat that particular [frustration] in question." *Smith v. Pac. Properties & Dev.*

4    *Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). An organization has associational standing to sue

5    on behalf of its members when: "(a) its members would otherwise have standing to sue in their

6    own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c)

7    neither the claim asserted nor the relief requested requires the participation of individual

8    members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977);

9    *Rousseau* at 1096.

10    Feds for Freedom has not addressed the standing argument and it should be dismissed as

11    a Plaintiff. It has failed to demonstrate that it has standing to sue in its own right: it has not

12    established that Defendants' actions resulted in a (a) frustration of its organizational mission or

13    (b) diversion of its resources. *Smith* at 1105. Further, it has not shown that it has associational

14    standing. The allegations in the Second Amended Complaint (Dkt. 72) or in the *LeBret*

15    Complaint (*LeBret*, 23-5961 Dkt. 1) do not demonstrate that (a) Feds for Freedom's "members

16    would otherwise have standing to sue in their own right" or that (b) "the interests it seeks to

17    protect are germane to the organization's purpose." *Hunt* at 343. Further, it also fails to show

18    that it has associational standing because it has not established that (c) "neither the claim[s]

19    asserted nor the relief requested requires the participation of individual members in the

20    lawsuit." *Id.* All claims seek damages requiring individualized participation. Feds for Freedom

21    does not have standing to sue.

22    **C. MOTION TO DISMISS RFRA CLAIM FOR FAILURE TO STATE A CLAIM**
      **UNDER FED. R. CIV. P. 12(b)(6) – ASSERTED AGAINST INDIVIDUAL**
23    **DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES**

24

1    Even if this Court had subject matter jurisdiction over the Plaintiffs' RFRA claim and had

2    personal jurisdiction over the Individual Defendants, the RFRA claim should be dismissed for

3    failure to state a claim under Fed. R. Civ. P. 12(b)(6) because the Individual Defendants are

4    entitled to qualified immunity.

5    The Plaintiffs do not dispute that qualified immunity is available as a defense from RFRA

6    claims.  Indeed, the Ninth Circuit Court of Appeals has granted qualified immunity to officials

7    sued in their individual capacities for RFRA claims.  *Padilla v. Yoo,* 678 F.3d 748, 768 (9th Cir.

8    2012)(dismissing RFRA claims based on qualified immunity); *Fazaga v. FBI,* 965 F.3d 1015,

9    1060 n. 42 (9th Cir. 2020)(same) *rev'd on other grounds,* 595 U.S. 344 (2022).

10    "Qualified immunity shields federal and state officials from money damages unless a

11    plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

12    (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-*

13    *Kidd*, 563 U.S. 731, 735 (2011)(*internal citations omitted*).  Courts have discretion to determine

14    which of the two steps of the analysis to address first.  *Id.*

15    This opinion will consider whether the Individual Defendants, in their individual

16    capacities, are entitled to qualified immunity, the second step.  As to the second step, the Court

17    must determine whether the rights asserted were "clearly established when viewed in the specific

18    context of the case." *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). For purposes of qualified

19    immunity, "[a] right is clearly established when it is sufficiently clear that every reasonable

20    official would have understood that what he is doing violates that right." *Rivas-Villegas v.*

21    *Cortesluna*, 142 S.Ct. 4, 7 (2021)(*cleaned up*). While case law directly on point is not required

22    for a right to be clearly established, "existing precedent must have placed the statutory or

23    constitutional question beyond debate." *Id.* at 7-8.

24

1   The Individual Defendants are entitled to qualified immunity on Plaintiffs' RFRA

2   claim.  The Plaintiffs have failed to point to any grounds from which to conclude that the

3   Individual Defendants violated their statutory rights under RFRA that were "clearly established

4   when viewed in the specific context of the case." *Saucier* at 2156.  They point to no existing

5   precedent that "placed the statutory or constitutional question[s] beyond debate" as is their

6   burden.  *Rivas-Villegas* at 7-8.

7   **D.  MOTION TO DISMISS TITLE VII CLAIM FOR FAILURE TO STATE A**
    **CLAIM UNDER FED. R. CIV. P. 12(b)(6) – ASSERTED AGAINST DOD**

8

9   Pursuant to Fed. R. Civ. P. 12(b)(6), the Defendants move to dismiss the Plaintiffs' Title

10  VII claims which are: (1) failure to accommodate, (2) harassment/hostile work environment, and

11  (3) disparate impact.  Dkt. 78.  The Defendants raise an additional argument for dismissal of

12  Plaintiff LeBret's Title VII claims.  *Id.*  They contend LeBret's Title VII claims should be

13  dismissed because he failed to timely exhaust his administrative remedies.  *Id.*

        1.  Title VII Failure to Accommodate Claim – Asserted by All Plaintiffs –
14          Against DoD

15  Title VII requires employers to accommodate an employee's religious beliefs unless

16  doing so would impose an undue hardship.  42 U.S.C. § 2000e(j).  Title VII failure to

17  accommodate claims are analyzed under a burden-shifting framework.  *Bolden-Hardge v. Office*

18  *of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023).  The employee must first

19  plead a prima facie case – they must plausibly allege that:  (i) they "had a bona fide religious

20  belief, the practice of which conflicts with an employment duty;" (ii) they "informed [their]

21  employer of the belief and conflict;" and (iii) "the employer discharged, threatened, or otherwise

22  subjected [them] to an adverse employment action because of [their] inability to fulfill the job

23  requirement."  *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 606 (9th Cir. 2004).  If the

24  employee is successful in pleading a prima facia case, the burden shifts to the employer to either

1   "show that it was nonetheless justified in not accommodating the employee's religious beliefs or

2   practices," *Bolden-Hardge* at 1222, or show that it "offered a reasonable accommodation to the

3   employee," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

4           The Plaintiffs fail to plead sufficient facts to establish a prima facie case.  They fail to

5   adequately allege element one, that they had a "bona fide religious belief, the practice of which

6   conflicts with an employment duty."  *Peterson* at 606.  While they assert a religious belief in not

7   receiving a COVID-19 vaccine, they do not allege that DoD ever required them to be vaccinated,

8   only that they were required to request an exemption.  They do not allege that applying for an

9   exemption conflicted with their religious beliefs.  The Plaintiffs complain about the time it took

10  for the decision to be made on their exemption requests and of the nature of the accommodations

11  offered in the interim.  They did not plausibly allege that they had a "bona fide religious belief,

12  the practice of which conflict[ed]" with waiting for a decision, testing, masking, social distancing

13  or travel restrictions.  There are no allegations about a conflict between their religious beliefs and

14  waiting for a decision, masking, social distancing or travel restrictions.

15          Only Plaintiffs Soliday and LeBret mention religious beliefs and testing.  Plaintiff

16  Soliday generally alleges that testing requirements violated her religious beliefs.  This, without

17  more, is insufficient. She fails to explain **how** her religious beliefs conflict with the testing

18  policy.  *See Arzamendi v. Austin*, 4:23-CV-0770-P, 2024 WL 1641962, at *3 (N.D. Tex. Apr. 16,

19  2024)(dismissing civilian DoD employee's Title VII failure to accommodate religious beliefs

20  claim based on the same DoD Executive Order 14043 policies at issue here).  Moreover, after

21  Plaintiff Soliday requested an exemption from the testing requirement, the government **granted**

22  it.  As to Plaintiff LeBret, even if the Court had jurisdiction over his untimely failure to

23  accommodate claim, his assertion that testing violated his religious beliefs was belied by his later

24  concession that he participated in COVID-19 testing without any religious objections.

1  Even if Plaintiff LeBret had established that he had religious beliefs that conflicted with

2  COVID-19 testing, he still did not make out a prima facie case. Plaintiff LeBret did not plausibly

3  allege that he informed DoD of his religious aversion to testing, as required by the second prima

4  facie element.

5  Further, the Plaintiffs fail to plausibly state a prima facie case as to the third element, that

6  DoD "discharged, threatened, or otherwise subjected [them] to an adverse employment action

7  because of [their] inability to fulfill the job requirement." *Peterson* at 606.  While they allege

8  that a progressive disciplinary system was in place for failure to follow the policy, they do not

9  plausibly allege that they did not follow the DoD's policy.  They were required to either get the

10  vaccine or apply for an exemption.  They applied for an exemption.  The Plaintiffs make no

11  showing that an adverse employment action was taken against them.

12  Even if the Plaintiffs had successfully pleaded a prima facia failure to accommodate case,

13  the Defendants have shown that it reasonably accommodated the Plaintiffs' religious beliefs by

14  allowing them to avoid the vaccine and follow the guidelines for all unvaccinated employees.

15  "[W]here the employer has already reasonably accommodated the employee's religious needs,

16  the statutory inquiry is at an end."  *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986).

17  Their Title VII failure to accommodate claim should be dismissed for failure to state a claim.

18  2.  Title VII Harassment/Hostile Work Environment Claim – Asserted by All
     Plaintiffs Against DoD

19  

20  To establish discrimination under a hostile work environment theory pursuant to Title

21  VII, a plaintiff must show they were subjected to sex, race, religion or national origin-based

22  "harassment that was sufficiently severe or pervasive to alter the conditions of employment."

23  *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020).  To determine whether the

24  conduct was sufficiently severe or pervasive, all the circumstances are considered, "including the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*.  The "required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.*  "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury." *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 687 (9th Cir. 2017). "The working environment must both subjectively and objectively be perceived as abusive, and the objective analysis is done from the perspective of," in this case, a "reasonable" religious person.  *See Fuller v. Idaho Dep't of Corr*., 865 F.3d 1154, 1161 (9th Cir. 2017).

The Plaintiffs contend that they were "treated as pariahs, disease carriers and disease-spreaders," that they suffered "'outing' experiences such as masking, testing, and forced absence from office-wide worth gatherings," and "intimidation, ridicule, and insult because of their religious beliefs."  Dkt. 72 and *LeBret,* 23-5961 Dkt. 1.  The Plaintiffs fail to demonstrate that their treatment was because of their **religious beliefs** and not because they were unvaccinated. The named Plaintiffs refer to general feelings but do not point to any specific acts or events of religious discrimination directed at a named Plaintiff that a reasonable religious person would perceive as "sufficiently severe or pervasive" to alter the conditions of their employment. *Christian* at 809.  Their harassment/hostile work environment claim should be dismissed for failure to state a claim.

### 3.  Title VII Disparate Impact Claim – Asserted by All Plaintiffs Except Plaintiff LeBret Against DoD

All Plaintiffs except Plaintiff LeBret assert a Title VII disparate impact claim.  Under Title VII, it is unlawful for an employer "to limit, segregate, or classify his employees . . . in any

1   way which would deprive or tend to deprive any individual of employment opportunities or

2   otherwise adversely affect his status as an employee, because of such individual's . . . religion . .

3   . ." 42 U.S.C. § 2000e-2(a)(2).  To plead a Title VII disparate impact prima facie case, a plaintiff

4   must "(1) show a significant disparate impact on a protected class or group; (2) identify the

5   specific employment practices or selection criteria at issue; and (3) show a causal relationship

6   between the challenged practices or criteria and the disparate impact." *Hemmings v. Tidyman's*

7   *Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002).  As to the third element, a "plaintiff must allege facts

8   at the pleading stage or produce statistical evidence demonstrating a causal connection [to] make

9   out a prima facie case of disparate impact." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive*

10  *Communities Project*, *Inc.*, 576 U.S. 519, 543 (2015).

11         The Plaintiffs' Title VII disparate impact claim should be dismissed.  The Plaintiffs have

12  failed to allege that the DoD's vaccination-or-exemption policy caused them to be deprived of

13  employment opportunities or that it "adversely affected [their] status as [employees]."  42 U.S.C.

14  § 2000e-2(a)(2).  None of the Plaintiffs' requests to be exempt from vaccination were denied.

15  Plaintiff Soliday's request to be exempt from the testing requirements was granted.  The

16  Plaintiffs fail to allege sufficient facts from which to find that compliance with DoD's

17  requirements for non-vaccinated people (masking, testing, etc.) was more than a *de minimis*

18  harm.  They make no plausible allegation that DoD's safety protocol for unvaccinated people

19  resulted in prohibited discrimination based on religion.  The Defendants' motion to dismiss

20  Plaintiff's Title VII disparate impact claim should be granted.

21                    4.   Timely Exhaustion of LeBret's Title VII Claims

22         The Defendants provide an additional ground to dismiss Plaintiff LeBret's Title VII

23  claims (which are (1) failure to accommodate and (2) harassment/hostile work environment).

24  Dkt. 78.  They argue that he did not timely exhaust his administrative remedies.  *Id.*

1    Title VII claims require that plaintiffs show that they have exhausted administrative

2    remedies as a precondition to filing suit. *Vinieratos v. U.S. Dep't of Air Force Through Aldridge*,

3    939 F.2d 762, 767–68 (9th Cir. 1991).  To exhaust, an employee must alert an EEO counselor of

4    any alleged discrimination within forty-five days of the relevant conduct.  29 C.F.R. §

5    1614.105(a).  "Failure to comply with the regulation is 'fatal to a federal employee's

6    discrimination claim.'"  *Cherosky v. Henderson,* 330 F.3d 1243, 1245 (9th Cir. 2003).  "The

7    continuing violations doctrine functions as an exception to the discovery rule of accrual allowing

8    a [Title VII] plaintiff to seek relief for events outside of the limitations period."  *Bird v. Dep't of*

9    *Human Servs*., 935 F.3d 738, 746 (9th Cir. 2019)(*internal quotation marks and citations*

10   *omitted*).  Regarding Title VII hostile work environment claims, "[i]t does not matter, for

11   purposes of the statute, that some of the component acts of the hostile work environment fall

12   outside the statutory time period" to exhaust administrative claims.  *Nat'l R.R. Passenger Corp.*

13   *v. Morgan*, 536 U.S. 101, 117 (2002).  As long as "an act contributing to the claim occurs within

14   the filing period, the entire time period of the hostile environment may be considered by a court

15   for the purposes of determining liability."  *Id.*

16   Plaintiff LeBret contacted an EEO counselor on December 13, 2021.  Dkt. 78-6 at 2.

17   Accordingly, all conduct prior to October 29, 2021 (including the DoD's October 18, 2021

18   official guidance requiring vaccination or medical or religious exemption - with testing, masking,

19   social distancing and restricted travel requirements – all of which he was aware) is barred unless

20   an exception applies.  *Morgan* at 116-117.  The Plaintiffs argue that the continuing violation

21   doctrine applies.

22   Plaintiff LeBret's Title VII claim for failure to accommodate should be dismissed.

23   Events related to those claims occurred before October 29, 2021 and are barred.  There is no

24   showing that an exception applies.  To the extent Plaintiff LeBret asserts a Title VII claim for

harassment/hostile work environment, the claim should be dismissed for failure to exhaust.  He argues in his response that "he did not file his religious accommodation request until November 7, 2021.  To the extent that the Navy continued to insist on vaccination in the face of sincere religious belief without acknowledging those beliefs, his harassment claims were timely."  Dkt. 82.  Plaintiff LeBret fails to show that DoD took "an act contributing to the claim" within the filing period.  *Morgan* at 117.  The DoD's implementing policies and guidance were in place well before he filed his exemption request.  It took no additional action against him.  His Title VII claims should be dismissed for failure to exhaust timely administrative remedies.  Even if his Title VII claims were timely, they should still be dismissed as explained in Section II.D.1-3.

### E.  LEAVE TO AMEND AND CONCLUSION

Pursuant to Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  A motion to amend under Rule 15(a)(2), "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party."  *Chudacoff v. University Medical Center of Southern Nevada,* 649 F.3d 1143, 1152 (9th Cir. 2011).

The Plaintiffs filed a Complaint (Dkt. 1), Amended Complaint (Dkt. 11) and Second Amended Complaint (Dkt. 72). The Second Amended Complaint (Dkt. 72) was one of the operative complaints for purposes of this motion.  They also attempted to plead the same claims in the consolidated *LeBret* case.  *LeBret,* 23-5961 Dkt. 1.  The *LeBret* Complaint (*LeBret,* 23-5961 Dkt. 1) was the other operative complaint.  Even though they made four separate attempts to plead claims for relief, they have failed to do so each time.  Clearly, an additional attempt would be futile.  Leave to amend should be denied.

The Defendants' motions (Dkts. 77 and 78) should be granted.  All claims should be dismissed.  Dismissal should be with prejudice and without leave to amend.  Any pending motions should be stricken, and the case closed.

### III.   ORDER

It is **ORDERED** that:

- The Individual Federal Defendants' Fed. R. Civ. P. 12(b) Motion to Dismiss Plaintiffs' Individual-Capacity Claims (Dkt. 77) **IS GRANTED;** and

- The Defendants' Official Capacity Defendants' Motion to Dismiss (Dkt. 78) **IS GRANTED;**

- All claims **ARE DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND;**

- Any pending motions **ARE STRICKEN,** and this case **IS CLOSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 10th day of June, 2024.

ROBERT J. BRYAN
United States District Judge